UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDRA BASTIEN, ROUDY BELUS, MARIBEL CASTRO VELAZQUEZ, TONI GABRIEL, MAURICE JOHNSON, MARLO LARRY, DONNA LEE, COURTNEY MYLES and CARLA VICENTE, in her personal capacity and on behalf of her minor child, DESTINY RAMOS, <br><br>Plaintiffs, <br><br>v. <br><br>WAL-MART STORES, INC., <br>Defendant. | **05 - 1 1 4 6 8 MLW** |

**COMPLAINT**

**Introduction.**                    MAGISTRATE JUDGE RBC

1.    This lawsuit arises from a pattern and practice of discrimination by the defendant,

Wal-Mart Stores, Inc. and its agents (collectively, "Wal-Mart") at Wal-Mart Store #2122 in

Avon, Massachusetts against Wal-Mart customers who are members of racial and ethnic

minority groups or who are associated with members of racial and ethnic minority groups. Over

the course of ten months, Wal-Mart singled out, falsely accused, searched, threatened and, in at

least one case, physically restrained minority shoppers on baseless suspicions of shoplifting.

Similarly situated white customers were not treated in such a manner. Wal-Mart's

discrimination against the plaintiffs on the basis of their race, color and/or national origin

violated the United States and Massachusetts Constitutions, various federal and state statutes,

Wal-Mart's own policies, as well as Wal-Mart's common law duties toward the plaintiffs.

RECEIPT # 45346
AMOUNT $ 250·CC
SUMMONS ISSUED 1
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 7/12/05

57135.10

## Jurisdiction and Venue

2.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1332. The amount in controversy as to each plaintiff exceeds $75,000 exclusive of interest and costs.

3.     Venue is proper in the District of Massachusetts under 28 U.S.C. §§ 1391(b) and (c).

## Parties

4.     Plaintiff Alexandra Bastien is an 18-year old Haitian American who lives in Brockton, Massachusetts.

5.     Plaintiff Roudy Belus is a 42-year old Haitian man who lives in Brockton, Massachusetts. Mr. Belus was the husband of plaintiff Maribel Castro Velazquez at all relevant times.

6.     Plaintiff Maribel Castro Velazquez is a 41-year old Mexican national who currently resides in Mexico City, Mexico. Ms. Castro Velazquez was married to plaintiff Roudy Belus at all relevant times.

7.     Plaintiff Toni Gabriel is an 18-year old Trinidadian American who lives in Brockton, Massachusetts.

8.     Plaintiff Maurice Johnson is a 30-year old African American man who lived in Brockton, Massachusetts at all relevant times but who currently lives in Alexandria, Virginia.

9.     Plaintiff Marlo Larry is a 42-year old African American woman who lives in Brockton, Massachusetts.

10.     Plaintiff Donna Lee is a 46-year old African American woman who lives in Brockton, Massachusetts.

57135.10

11.     Plaintiff Courtney Myles is an 18-year old Caucasian woman who lives in Brockton, Massachusetts.

12.     Plaintiff Carla Vicente is a 32-year old Cape Verdean woman who lives in Brockton, Massachusetts. Ms. Vicente is suing on her own behalf and on behalf of her minor child, Destiny Ramos, who was 13-years old at the time of the incident.

13.     Defendant Wal-Mart is a Delaware corporation with its principal place of business in Bentonville, Arkansas. Wal-Mart, a discount retailer, conducts business throughout the United States. On information and belief, as of January 1, 2005, Wal-Mart owned and operated 3,066 discount stores and supercenters in the United States alone, including Wal-Mart Store #2122 (the "Avon Wal-Mart"), located in Avon, Massachusetts, which is the site of each incident of discrimination complained of by the plaintiffs.

14.     Wal-Mart committed, authorized, encouraged, sanctioned, ratified, and approved the unlawful policies, actions, and conduct described in this Complaint.

15.     At all relevant times, Wal-Mart's employees and managers were acting in their capacities as employees, agents, and/or representatives of Wal-Mart.

16.     At all relevant times, Wal-Mart's employees and managers were acting within the scope of their employment.

17.     At all relevant times, Wal-Mart's employees and managers were under the authority, control and supervision of Wal-Mart.

## Factual Background

### Discrimination Against Bastien, Gabriel and Myles.

18.     On or about September 29, 2003, Alexandra Bastien, Toni Gabriel and Courtney Myles went to the Avon Wal-Mart to shop for sweatpants for Ms. Myles.

- 3 -

57135.10

19.    Ms. Bastien and Ms. Gabriel are black; Ms. Myles is white. All three teens are close friends who attended the same school and had often shopped together at this Wal-Mart.

20.    Soon after they were looking at sweatpants, Ms. Bastien, Ms. Gabriel and Ms. Myles became aware that they were being watched by a white female Wal-Mart employee.

21.    The surveillance made the three teens uncomfortable.

22.    When the three girls did not find a pair of suitable sweatpants, they started browsing through the music and make-up departments. As they browsed through Wal-Mart's merchandise, they realized they were still under surveillance.

23.    The girls then decided to leave the store without having made any purchase.

24.    Before the three girls reached the exit door, however, and without any security alarm having sounded, the same white female employee who had been watching them ordered them to stop. This employee demanded to search Ms. Bastien's purse and demanded that Ms. Gabriel empty her pockets. The two teens complied.

25.    Although Ms. Myles was standing in between Ms. Bastien and Ms. Gabriel during the search, and although she was carrying a purse and had on clothing with pockets, the white female employee ignored Ms. Myles and made no attempt whatsoever to search Ms. Myles' purse or pockets.

26.    Upon information and belief, Wal-Mart's own policies prohibit its employees from, among other things, searching Wal-Mart's customers or its customers' personal belongings.

27.    The search of Ms. Bastien and Ms. Gabriel was conducted near the front of the store in view of other customers. All three girls were deeply humiliated by this very public search and detention.

- 4 -

57135.10

28.   The employee found no Wal-Mart merchandise in Ms. Bastien's purse or on Ms. Gabriel's person. None of the three girls had shoplifted any Wal-Mart merchandise.

29.   A white male Wal-Mart employee who was, on information and belief, an Assistant Manager, observed the entire incident and failed to intervene. This employee refused Ms. Gabriel's request to speak to the store manager, and then followed the three girls out of the store as if they had engaged in some wrongdoing.

**Discrimination Against the Beluses**

30.   Just two days earlier, on or about September 27, 2003, Roudy Belus, Maribel Castro Velazquez (who was then known as Maribel Belus), and Mr. Belus's 8 year-old daughter went shopping at the Avon Wal-Mart.

31.   Mrs. Belus wore a small nylon backpack on her back that functioned as a purse. Mrs. Belus did not open her backpack at any time while in the store.

32.   Mr. and Mrs. Belus purchased several items. Before they had exited the store, a white female Wal-Mart employee ordered the Beluses to stop, even though the security alarm had not sounded. The employee claimed that she needed to search Mrs. Belus's backpack.

33.   The Wal-Mart employee searched inside Mrs. Belus's backpack and removed a container of hair coloring that bore the tag of another store. The employee interrogated Mr. and Mrs. Belus about the hair coloring and demanded to see a receipt from the other store. During this interrogation, many other shoppers were forced to walk around the Beluses while leaving the store.

34.   Upon information and belief, Wal-Mart's own policies prohibit its employees from, among other things, searching Wal-Mart's customers or its customers' personal belongings.

- 5 -

57135.10

35.     White shoppers were permitted to leave without being stopped or searched.

36.     Mr. Belus complained to the two white female Wal-Mart managers who had joined the first employee, each of whom stated that the employee was "just doing her job." One of the managers claimed that Wal-Mart had posted a sign advising shoppers that all backpacks must be checked.

37.     Upon information and belief, no such sign had been posted at the Avon Wal-Mart prior to the time Mr. and Mrs. Belus entered the store.

38.     Although Mr. and Mrs. Belus had paid for each item in their possession, on information and belief, Wal-Mart personnel called the police to report that Wal-Mart had detained shoplifters. When the police arrived, Mr. Belus's daughter began to tremble and cry. Other shoppers continued to stare at the family. Mr. and Mrs. Belus felt even more humiliated as they were publicly questioned by the police.

39.     The police refused to charge the Beluses with shoplifting.

**Discrimination Against Lee and Larry**

40.     On or about December 20, 2002, Marlo Larry and Donna Lee went shopping together at the Avon Wal-Mart. The store was particularly crowded due to the upcoming holidays. Most of the shoppers were white.

41.     Due to the crowds at the registers, Ms. Lee and Ms. Larry purchased their items at the jewelry counter. Together, their purchases totaled several hundred dollars.

42.     After paying for their items, Ms. Lee and Ms. Larry headed toward the exit with their shopping bags in a cart. Ms. Lee and Ms. Larry started to exit the store at the same time as several white shoppers who also had bags of merchandise. As this group of shoppers passed through the gate, the security alarm sounded.

- 6 -

43.     A white male Wal-Mart employee stopped Ms. Lee and Ms. Larry at the door and demanded to see receipts for their purchases. He did not stop any of the white shoppers who were also passing through the doors when the alarm sounded.

44.     In full view of other shoppers, the Wal-Mart employee opened Ms. Lee's and Ms. Larry's shopping bags and compared each of their purchased items one by one with their itemized receipts.

45.     Ms. Lee and Ms. Larry had paid for every item in their possession.

46.     After their bags were searched, Ms. Lee and Ms. Larry tried, for the second time, to leave the store. Again, they went through the doors with other white shoppers. Again, the alarm sounded, and again Ms. Lee and Ms. Larry were singled out by the same white male employee as suspected shoplifters, even though he had just searched their bags moments before. White customers exiting at the same time were not stopped.

47.     A police officer, who upon information and belief was being paid by Wal-Mart to serve as store security, ordered Ms. Lee and Ms. Larry back inside the store. In the presence of Wal-Mart employees, he claimed that Wal-Mart had a videotape that showed Ms. Lee and Ms. Larry shoplifting.

48.     Wal-Mart's employees were silent in response to the claim by the police officer that Wal-Mart had a videotape that showed Ms. Lee and Ms. Larry shoplifting.

49.     Upon information and belief, no such video tape existed. Even if such a video tape existed, it did not show Ms. Lee and Ms. Larry shoplifting.

50.     By this time, additional Wal-Mart employees were involved, all of whom were white. The Wal-Mart employees searched Ms. Lee's and Ms. Larry's shopping bags for a

- 7 -

second time. They also searched the women's purses and wallets, and even opened the inner zippered compartments in Ms. Larry's wallet.

51.     Upon information and belief, Wal-Mart's own policies prohibit its employees from, among other things, searching Wal-Mart's customers or its customers' personal belongings.

52.     The searches and questioning of Ms. Lee and Ms. Larry were conducted near the store's entrance as many other customers looked on. Ms. Lee was crying and both she and Ms. Larry were deeply angered and humiliated by their treatment at the hands of the Wal-Mart employees.

53.     Again, no stolen merchandise was found, and Ms. Lee and Ms. Larry were finally allowed to leave the Avon Wal-Mart.

54.     Although the Avon Wal-Mart is a very short drive from each of their homes, both women now often drive upwards of thirty minutes for the kind of shopping they previously did at the Avon Wal-Mart in order to avoid returning to that store.

**Discrimination Against Johnson**

55.     On or about July 3, 2003, Maurice Johnson went shopping at the Avon Wal-Mart.

56.     Mr. Johnson bought several items and proceeded toward the exit.

57.     Before he reached the exit or the security sensors, a white female Wal-Mart employee stopped Mr. Johnson, grabbed his cart, and demanded to check his shopping bag. Mr. Johnson was the only non-white shopper leaving the store at the time and the only shopper stopped by the employee.

58.     The Wal-Mart employee told Mr. Johnson that she stopped him to search his bag in accordance with "store policy."

- 8 -

59.    Upon information and belief, Wal-Mart had no policy at the time of the incident that authorized or required a search prior to the customer exiting the store and where no alarm has sounded.

60.    The search of Mr. Johnson's bag was conducted near the front of the store in view of other customers. Mr. Johnson was deeply humiliated by this very public search and detention.

61.    Mr. Johnson had paid for every purchase in his possession.

62.    Mr. Johnson sought the assistance of two white male Wal-Mart employees who were standing nearby, whom he believed to be managers. These employees offered no explanation or assistance. In response to Mr. Johnson's request for the name of the store manager, these employees told him it would be useless to contact the store manager in light of the purported store policy.

63.    Although the Avon Wal-Mart was just a short drive from his home, between the date of the incident and when he moved from the area, Mr. Johnson never returned to the Avon Wal-Mart and instead, was forced to drive out of his way to shop elsewhere.

**Discrimination Against Vicente and Ramos**

64.    On or about August 30, 2003, Carla Vicente went to the Avon Wal-Mart with her four children, ages 2, 7, 10 and 13, and her 11-year old niece to buy school supplies and backpacks.

65.    While the cashier was in the process of ringing up Ms. Vicente's purchases, a white female Wal-Mart employee approached Ms. Vicente and began to empty Ms. Vicente's shopping bags that the cashier had already placed in Ms. Vicente's cart. The employee held up three pens and a small bottle of glue and loudly asked, "What's this?" Other customers turned to watch at the sound of the Wal-Mart employee's voice.

- 9 -

57135.10

66.     Ms. Vicente was not sure if she had already paid for these items or if perhaps her 7-year old had placed them in the backpack she was buying for him. She told the cashier she only intended to buy the glue.

67.     As the white female continued to empty out and go through Ms. Vicente's purchases after the cashier had bagged them, the cashier advised Ms. Vicente that the employee in question "does that to all the blacks and minorities" or words to that effect.

68.     Ms. Vicente paid over $200 for all of the items that she intended to purchase.

69.     Ms. Vicente approached a Wal-Mart store manager to complain about the white female employee's actions. The store manager told her that the employee was "just doing her job" and he threatened to charge Ms. Vicente with shoplifting if she did not "shut up." When Ms. Vicente became upset, the manager called the police.

70.     Dozens of other customers at the various cash registers were staring at Ms. Vicente and her children. The children were frightened and some were crying.

71.     Ms. Vicente told the Wal-Mart employees that she wanted to return everything that she had just purchased and demanded a refund.

72.     The Wal-Mart employees refused to refund Ms. Vicente's money.

73.     Ms. Vicente instructed her 13-year old daughter, Destiny Ramos, to go to their car and retrieve Ms. Vicente's cell phone.

74.     Three white male Wal-Mart employees blocked the door to prevent Destiny from leaving the store. One of those male Wal-Mart employees physically restrained the young girl by placing his hand on her chest.

75.     Upon information and belief, Wal-Mart's own policies prohibit the touching or grabbing of a customer. Upon information and belief, Wal-Mart had no policy that authorized or required a search prior to the customer exiting the store and where no alarm has sounded.

76.     The entire family was prevented from leaving the store until the police arrived. Customers who were exiting the store stared at them. The entire family was extremely distraught.

77.     When the police arrived, they refused to press charges against Ms. Vicente. Only then were Ms. Vicente and the children permitted to leave the store.

78.     Ms. Vicente was banned from the Avon Wal-Mart store and was told by Wal-Mart that if she returns she will be arrested for trespassing.

## Count I
## (42 U.S.C. § 1981 –Contracts Clause)

79.     The plaintiffs adopt by reference the allegations contained in ¶¶ 1-78 above.

80.     Each of the plaintiffs is a member of a racial or ethnic minority group or was, at the time of the incident, associated with a member of a racial or ethnic minority.

81.     Wal-Mart intentionally and purposefully discriminated against each plaintiff other than Ms. Myles on the basis of his or her race, color and/or national origin.

82.     Wal-Mart intentionally and purposefully discriminated against Ms. Myles on the basis of her association with Ms. Bastien and Ms. Gabriel, who are members of ethnic and/or racial minorities.

83.     Each of the plaintiffs was denied the ability to make, perform, modify or terminate a contract, as defined by 42 U.S.C. § 1981(b), by reason of race-based animus.

84.     Wal-Mart acted in bad faith and with callous indifference to the plaintiffs' federally protected rights.

- 11 -

57135.10

85. The plaintiffs have suffered injuries as a result of Wal-Mart's unlawful conduct.

86. Each of the plaintiffs is entitled to relief of compensatory and punitive damages under 42 U.S.C. § 1981.

87. Each of the plaintiffs is entitled to a reasonable attorney's fee under 42 U.S.C. § 1988.

## Count II
## (42 U.S.C. § 1981 – Equal Benefits Clause)

88. The plaintiffs adopt by reference the allegations contained in ¶¶ 1-87 above.

89. Each of the plaintiffs is a member of a racial or ethnic minority group or was, at the time of the incident, associated with a member of a racial or ethnic minority.

90. Wal-Mart intentionally and purposefully discriminated against each plaintiff other than Ms. Myles on the basis of his or her race, color and/or national origin.

91. Wal-Mart intentionally and purposefully discriminated against Ms. Myles on the basis of her association with Ms. Bastien and Ms. Gabriel, who are members of ethnic and/or racial minorities.

92. Each of the plaintiffs was denied the ability to enjoy all the benefits, privileges, terms, and conditions of the contractual relationship, as defined by 42 U.S.C. § 1981(b), by reason of race-based animus.

93. Wal-Mart acted in bad faith and with callous indifference to the plaintiffs' federally protected rights.

94. The plaintiffs have suffered injuries as a result of Wal-Mart's unlawful conduct.

95. Each of the plaintiffs is entitled to relief of compensatory and punitive damages under 42 U.S.C. § 1981.

- 12 -

57135.10

96. Each of the plaintiffs is entitled to a reasonable attorney's fee under 42 U.S.C. §

1988.

## Count III
### (42 U.S.C. § 1982 – Equal Right to Purchase, Hold, or Convey Personal Property )

97. The plaintiffs adopt by reference the allegations contained in ¶¶ 1-96 above.

98. Each of the plaintiffs is a member of a racial or ethnic minority group or was, at the time of the incident, associated with a member of a racial or ethnic minority.

99. Wal-Mart intentionally and purposefully discriminated against each plaintiff other than Ms. Myles by interfering with each plaintiffs' right to purchase, hold or convey personal property on account of race-based animus.

100. Wal-Mart intentionally and purposefully discriminated against Ms. Myles by interfering with her right to purchase, hold or convey personal property on account of her association with Ms. Bastien and Ms. Gabriel, who are members of ethnic and/or racial minorities.

101. Wal-Mart acted in bad faith and with callous indifference to the plaintiffs' federally protected rights.

102. The plaintiffs have suffered injuries as a result of Wal-Mart's unlawful conduct.

103. Each of the plaintiffs other than non-citizen Maribel Castro Velazquez is entitled to relief of compensatory and punitive damages under 42 U.S.C. § 1982.

104. Each of the plaintiffs other than non-citizen Maribel Castro Velazquez is entitled to a reasonable attorney's fee under 42 U.S.C. § 1988.

## Count IV
### (M.G.L. c. 12, § 11I -- Massachusetts Civil Rights Act, )

105. The plaintiffs adopt by reference the allegations contained in ¶¶ 1-105 above.

- 13 -

57135.10

106. Wal-Mart interfered with or attempted to interfere with each plaintiffs' rights, including the right to Equal Protection of the laws as secured by the Fourteenth Amendment to the Federal Constitution and Article I of the Massachusetts Constitution, the right to be free from unreasonable search and seizure as secured by the Fourth Amendment to the Federal Constitution and Article XIV of the Massachusetts Constitution, the right to make and enforce contracts, the right to purchase, hold or convey personal property, and the right to use public accommodations, by threats, coercion or intimidation.

107. Each plaintiff was harmed by this deprivation of his or her rights.

108. Each plaintiff is entitled to compensatory damages and costs and attorneys' fees under M.G.L. c. 12, § 11I.

## Count V
### (M.G.L. c. 93A, § 9 – Massachusetts Consumer Protection Act)

109. The plaintiffs adopt by reference the allegations contained in ¶¶ 1-108 above.

110. Wal-Mart is a "person" within M.G.L. c. 93A, § 1.

111. Wal-Mart was and is engaged in "trade" or "commerce."

112. Wal-Mart engaged in unfair business acts or practices under M.G.L. c. 93A, § 2 when it used race or ethnicity as a factor in its decision to subject each of the plaintiffs to surveillance, detainment, search, and/or to assert against each plaintiff a baseless allegation of shoplifting.

113. On or about December 10, 2004, the plaintiffs, through counsel, sent Wal-Mart a demand letter pursuant to M.G.L. c. 93A. The demand letter described the conduct by Wal-Mart that constituted the unfair business acts or practices, the injuries the plaintiffs sustained, and which, in the spirit of compromise, offered to settle the case for $400,000.

- 14 -

114. By letter dated January 7, 2005, Wal-Mart responded to the plaintiffs' c. 93A demand letter. Although Wal-Mart offered to enter into private mediation with the plaintiffs, Wal-Mart's response was unreasonable because it tendered no offer of settlement.

115. Each plaintiff is entitled to treble damages and reasonable attorneys' fees and costs.

## Count VI
## (M.G.L. c. 93, § 102 – Equal Rights Act)

116. The plaintiffs adopt by reference the allegations contained in ¶¶ 1-115 above.

117. Wal-Mart deprived each of the plaintiffs of their rights to make and enforce contracts, to purchase, hold and convey personal property, on the basis of the plaintiffs' race, color or national origin.

118. Each plaintiff is entitled to compensatory and exemplary damages and costs and reasonable attorneys' fees under M.G.L. c. 93, § 102.

## Count VII
## (M.G.L. c. 272, § 98 – Discrimination in a Place of Public Accommodation)

119. The plaintiffs adopt by reference the allegations contained in ¶¶ 1-118 above.

120. Wal-Mart discriminated against each plaintiff on account of race, color or national origin in a retail establishment.

121. Under M.G.L. c. 272, § 92A, a retail establishment is a place of public accommodation.

122. The plaintiffs have suffered injuries as a result of Wal-Mart's unlawful conduct.

123. Each plaintiff is entitled to damages under M.G.L. c. 272, § 98.

## Count VIII
## (Good Faith and Fair Dealing)

124. The plaintiffs adopt by reference the allegations contained in ¶¶ 1-123 above.

- 15 -

125. Each purchase and contemplated purchase made by the plaintiffs constituted a contract between each plaintiff and Wal-Mart.

126. A covenant of good faith and fair dealing is implied in every contract.

127. Wal-Mart breached the covenant of good faith and fair dealing when it used race or ethnicity as a factor in its decision to subject each of the plaintiffs to surveillance, detainment, search, and/or to assert against each plaintiff a baseless allegation of shoplifting.

128. Each plaintiff was harmed by Wal-Mart's breach and is entitled to damages suffered as a consequence of that breach.

## Count IX
### (Common Law False Imprisonment)

129. The plaintiffs adopt by reference the allegations contained in ¶¶ 1-128 above.

130. Wal-Mart unreasonably and intentionally detained each of the plaintiffs by force or threat.

131. Each of the plaintiffs was harmed by the mental suffering, embarrassment, humiliation and mental anguish brought on by the conduct of Wal-Mart.

132. Each plaintiff is entitled to damages for the harm caused by Wal-Mart.

## Count X
### (Common Law Intentional Infliction of Emotional Distress)

133. The plaintiffs adopt by reference the allegations contained in ¶¶ 1-132 above.

134. Wal-Mart knew or should have known that singling out minority shoppers to be detained and searched would cause emotional distress.

135. The conduct of Wal-Mart of singling out and searching only minority shoppers was extreme and outrageous.

136. The conduct of Wal-Mart was the cause of the plaintiffs' distress.

- 16 -

137. The plaintiffs suffered severe emotional distress as a result of the conduct of Wal-Mart.

138. Each of the plaintiffs is entitled to recover damages for the conduct of Wal-Mart.

## Count XI
### (Common Law Defamation)

139. The plaintiffs adopt by reference the allegations contained in ¶¶ 1-138 above.

140. The words and actions of Wal-Mart imputed the crime of larceny to each of the plaintiffs, which is defamatory *per se*.

141. Each of the plaintiffs was harmed by the conduct of Wal-Mart.

142. Each of the plaintiffs is entitled to recover damages for the actions of Wal-Mart.

## Count XII
### (Assault and Battery as to Destiny Ramos)

143. The plaintiffs adopt by reference the allegations contained in ¶¶ 1-142 above.

144. Wal-Mart used intentional, unconsented to and unjustified force when its employee placed his hand upon Carla Vicente's minor child, Destiny Ramos.

145. Destiny Ramos was harmed by this unwanted touching.

146. Destiny Ramos is entitled to recover for the damages caused by Wal-Mart's conduct.

## Requested Relief

WHEREFORE, the plaintiffs respectfully requests that the Court grant the following relief:

A. Award plaintiffs compensatory damages in an amount to be determined at trial for the plaintiffs' losses and injuries;

- 17 -

B.   Award plaintiffs punitive damages in an amount to be determined at trial

that would punish Wal-Mart for its willful, wanton, and reckless conduct and to effectively deter

Wal-Mart from engaging in similar conduct in the future;

C.   Award plaintiffs prejudgment interest;

D.   Award plaintiffs reasonable attorneys' fees and costs incurred in this

action; and

E.   Award plaintiffs such other relief as the Court deems appropriate and just.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

ALEXANDRA BASTIEN, ROUDY
BELUS, MARIBEL CASTRO
VELAZQUEZ, TONI GABRIEL,
MAURICE JOHNSON, MARLO LARRY,
DONNA LEE, COURTNEY MYLES,
CARLA VICENTE, and DESTINY
RAMOS,

by their attorneys:

Ruth T. Dowling (BBO #645568)
Cara M. Cheyette (BBO #648107)
PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100

Barbara J. Dougan (BBO # 558392)
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW OF THE BOSTON BAR
ASSOCIATION
294 Washington Street, Suite 443
Boston, MA 02108
(617) 482-1145

- 18 -

57135.10

Anne-Marie G. Harris (BBO #557862)
SALEM STATE COLLEGE
SCHOOL OF BUSINESS
352 Lafayette Street
Salem, MA 01970
(978) 542-6823

July 12, 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**05 - 11468 MLW**

1. Title of case (name of first party on each side only) __Alexandra Bastien, et al., v. Wal-Mart Stores, Inc.__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

   [ ] I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   [✓] II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.       for patent, trademark or copyright cases

   [ ] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

   [ ] IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

   [ ] V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES [ ]     NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

   YES [ ]     NO [✓]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES [ ]     NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES [ ]     NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES [✓]     NO [ ]

   A.  If yes, in which division do all of the non-governmental parties reside?

       Eastern Division [✓]     Central Division [ ]     Western Division [ ]

   B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

       Eastern Division [ ]     Central Division [ ]     Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES [ ]     NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME __Cara Cheyette__

ADDRESS __111 Huntington Ave., Boston, MA 02199__

TELEPHONE NO. __(617) 239-0100__

(Coversheetlocal.wpd - 10/17/02)

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Alexandra Bastien, Roudy Belus, Maribel Castro Velazquez, Toni Gabriel, Maurice Johnson, Marlo Larry, Donna Lee, et al.

## DEFENDANTS

Wal-Mart Stores, Inc.

**(b)** County of Residence of First Listed Plaintiff    Plymouth
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Cara Cheyette, Esq., Palmer & Dodge LLP, 111 Huntington Ave, Boston, MA 02199, (617) 239-0100

Attorneys (If Known)

Susan G. Fentin, Esq., Skoler Abbott & Presser, P.C., One Monarch Place, Springfield, Massachusetts 01144

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                     and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☒ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 USC 1981; 42 USC 1982

Brief description of cause:
Discrimination in retail store

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ greater than $75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE
07/12/2005

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____