UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDRA BASTIEN, ROUDY BELUS, MARIBEL CASTRO VELAZQUEZ, TONI GABRIEL, MAURICE JOHNSON, MARLO LARRY, DONNA LEE, COURTNEY MYLES and CARLA VICENTE, in her personal capacity and on behalf of her minor child, DESTINY RAMOS,<br>　　　　　　　　　　Plaintiffs,<br>　v.<br>WAL-MART STORES, INC.,<br>　　　　　　　　　　Defendant. | Civil Action<br>No. 05-CV-11468-MDW |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

Plaintiffs Bastien, Belus, Castro Velazquez, Gabriel, Johnson, Larry, Lee, Myles and Vicente move, pursuant to Fed. R. Civ. P. 15(a), to amend their original Complaint (filed on July 12, 2005) to add three additional plaintiffs. These three proposed additional plaintiffs, Alezalee Ayala, Chris Sandiford and Michelle Tyler (collectively, "Proposed Additional Plaintiffs"), like the original plaintiffs, were customers of defendant Wal-Mart Stores, Inc. ("Wal-Mart") who were targeted and falsely accused of shoplifting by Wal-Mart solely on account of their race, color and/or nation origin. Granting plaintiffs' motion will cause neither delay nor prejudice because discovery has not yet been commenced – indeed, no scheduling order is yet in place. In addition, where the complaint charges Wal-Mart with a pattern practice of discrimination, the claims of the Proposed Additional Plaintiffs are logically related to the claims of the original plaintiffs and share questions of law and fact, thus satisfying the joinder requirements set forth in Fed. R. Civ. P. 20(a). The proposed amended complaint is attached at Exhibit A to the plaintiffs' motion.

**Argument.**

I. **PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD BE GRANTED.**

   A.  **The proposed amended complaint satisfies the requirements of Rule 15(a).**

Courts have interpreted the plain language of Rule 15(a) to establish a liberal policy toward allowing amendments because "[i]f the underlying facts or circumstances relied upon by a plaintiff may be proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman* v. *Davis*, 371 U.S. 178, 182 (1962). By corollary, leave to amend should not be denied absent a finding of undue delay, bad faith, dilatory motive, futility of amendment, or prejudice. *See Nasson* v. *Van Winkle*, 1994 WL 175049, * 1 (D. Mass.); *Picker Int'l, Inc*. v. *Leavitt*, 128 F.R.D. 3, 8 (D. Mass. 1989). Moreover, the party opposing a motion for leave to amend bears the burden of demonstrating that the proposed amendment will cause it to suffer a "grave injustice:" "its mere statement that prejudice will result if the amendment is allowed is not sufficient reason for denying leave to amend." *Pendley* v. *Komori Printing Machinery Co., Ltd.*, 1990 W.L. 17152, *3 (D.R.I.). Because none of the countervailing reasons are present here, and Wal-Mart cannot meet its burden to establish otherwise, the Court should grant the plaintiffs' motion to amend.

Wal-Mart cannot reasonably argue that plaintiffs' amendment should be denied on grounds of undue delay or prejudice for four reasons: (1) the plaintiffs' motion for leave to amend follows closely on the heels of the July 12, 2005 filing of the original complaint; (2) no scheduling order has yet been put in place; (3) neither party has propounded any discovery, and, importantly, (4) Wal-Mart will have to defend itself against the claims of the Proposed Additional Plaintiffs whether the motion to amend is granted or denied. *Cf. Picker Int'l Inc.*, 128 F.R.D. at 8 (granting motion to amend to add additional claims where "there is no significant cognizable prejudice because the defendant will, in either event, be required to litigate the merits

of the claims in some forum").[1]  *See also Bangor* v. *Citizens Communications Co.*, 2003 WL 22003100, *2 (D. Me.) (ruling that "it would be counterproductive" to deny motion to join additional defendant where nothing prevented moving party from instituting separate suit against proposed defendant).

By contrast, plaintiffs will be prejudiced if the amendment is denied.  Although at trial, each plaintiff will be required to establish the circumstances of his or her search, detention, or harassment by Wal-Mart, evidence that Wal-Mart repeatedly discriminated against minority shoppers will be powerful, probative evidence that such treatment comported with a company-wide policy of discrimination (or a willful blind eye to its occurrence).  Denying the plaintiffs' motion to amend will effectively pre-judge the matter before any discovery has been taken by eliminating the plaintiffs' opportunity to establish this pattern and practice.

**B.  The proposed amendment complaint satisfies the requirements of Rule 20(a).**

Where plaintiffs seek to add additional plaintiffs to a pending action, and Wal-Mart has already moved to sever the claims of the original plaintiffs, it is likely that the Court will evaluate the proposed amended complaint in light of the requirements set forth in Rule 20(a) for permissive joinder.

Pursuant to Rule 20(a), all persons may join in one action as plaintiffs (1) "if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction or occurrence, or series of transactions or occurrences;" and (2) "any question of law or fact common to all these persons will arise in the action."  Fed. R. Civ. P. 20(a).  "The transaction and common-question requirements prescribed by Rule 20 are not rigid tests.  They

---

[1] In footnote 1 of Wal-Mart's Motion to Sever, Wal-Mart asserts – incorrectly – that the statute of limitations for a claim under § 1981 is 300 days.  Plaintiffs anticipate that Wal-Mart may argue that the Proposed First Amended Complaint is futile to the extent that it asserts "time-barred" claims under 42 U.S.C. § 1981.  Wal-Mart is mistaken on this front.  It is well-settled that a "claim under § 1981 is governed by Massachusetts three-year statute of limitations for personal injury claims." *Lassiter* v. *Mass. Bay Transp. Auth.*, 2002 WL 1858761, *3 (D. Mass). *See also*  M.G.L. c. 260, § 2A.

are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy." Wright, *Federal Practice & Procedure*, vol. 7, § 1653 at 415 (2001 ed.).

The plaintiffs satisfy the "transactional" prong of Rule 20(a) because each of the Proposed Additional Plaintiffs' claims are "logically related" to the claims of each of the other plaintiffs' claims. *See id.* at 409 (noting with approval the use of the flexible "logically related" test for purposes of Rule 20(a)). *See also M.K.* v. *Tenet*, 216 F.R.D. 133, 142 (D.D.C. 2002) (ruling that "alleged repeated pattern of [improper conduct] is 'logically related' as 'a series of transactions or occurrences' that establishes an overall pattern of policies and practices" for purposes of Rule 20(a)) (attached at Tab 1).

Here, each of the Proposed Additional Plaintiffs, like the original plaintiffs, alleges that while shopping – or attempting to shop – at a Wal-Mart store in Massachusetts, he or she was targeted for search or surveillance, treated with suspicion, and/or accused of shoplifting solely on account of his or her race. "Despite the differences in the factual underpinnings of their respective claims, plaintiffs have alleged a pattern of conduct … which discriminated against them on the basis of [race, color and/or national origin]." *Puricelli* v. *CAN Ins. Co.*, 185 F.R.D. 139, 143 (N.D.N.Y.), *dismissed on other grounds*, 103 F. Supp. 2d 91 (1999) (attached at Tab 2).

The plaintiffs easily satisfy the second prong of Rule 20(a), as well. By its plain terms, the Rule does not require that <u>all</u> questions of law and fact be common to all plaintiffs, but simply that there be "any" commonality of law or fact among all of the plaintiffs. The fundamental question of fact common to all plaintiffs is whether Wal-Mart's targeting of these individuals as shoplifting suspects was triggered by anything other than the plaintiffs' race, color or national origin. In addition, where the plaintiffs allege that this discrimination was

implemented by employees, security personnel and managers, common questions of fact will inevitably arise concerning (to state just one example) the message that Wal-Mart conveys to its employees (whether express or implicit) about minority shoppers in the course of training its employees about Wal-Mart's loss prevention problems or goals. Common questions of law will also arise in this action because each of the plaintiffs (both the original and Proposed Additional) seek relief under the bulk of the legal theories set forth in the Complaint, including federal and state civil rights statutes (i.e., 42 U.S.C. § 1981, M.G.L. c. 12, § 11I , M.G.L. c. 93, § 102, M.G.L. c. 272, § 98) as well as the counts for violation of c. 93A, breach of the covenant of good faith and fair dealing, false imprisonment and defamation.

Finally, the proposed amendment serves the policy goal of judicial economy. The original complaint charges Wal-Mart with engaging in a pattern and practice of discrimination against minority shoppers, as evidenced by its treatment of 10 individuals over the course of five incidents. Adding three additional plaintiffs and incidents to the pending action is a far better use of judicial resources than opening up three new docket numbers, establishing three separate scheduling orders, and – unfortunately, but almost certainly – guaranteeing that the Court will be asked to resolve multiple instances of identical disputes concerning the proper scope of discovery.

## CONCLUSION

For all of the foregoing reasons, the Court should grant plaintiffs' motion for leave to amend their Complaint, and permit them to file the proposed First Amended Complaint, attached as Exhibit A to the plaintiffs' motion.

- 6 -

By their attorneys:


 /s/ Cara M. Cheyette
Ruth T. Dowling (BBO #645568)
Cara M. Cheyette (BBO #648107)
Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100

Barbara J. Dougan (BBO # 558392)
Lawyers' Committee For Civil Rights
Under Law of the Boston Bar Association
294 Washington Street, Suite 443
Boston, MA 02108
(617) 482-1145

Anne-Marie G. Harris (BBO #557862)
Salem State College
School of Business
352 Lafayette Street
Salem, MA 01970
(978) 542-6823

September 26, 2005

LEXSEE 216 FRD 133

**M.K. et al., Plaintiffs, v. GEORGE TENET, Director, Central Intelligence Agency, et al., Defendants.**

**Civil Action No.: 99-0095 (RMU), Document Nos.: 51, 59, 65**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*216 F.R.D. 133; 2002 U.S. Dist. LEXIS 26668*

**July 30, 2002, Decided**

**PRIOR HISTORY:** *M.K. v. Tenet, 196 F. Supp. 2d 8, 2001 U.S. Dist. LEXIS 22888 (D.D.C., 2001)*

**DISPOSITION:** **[\*\*1]** Plaintiffs' motion to file second amended complaint granted; Defendants' motion to sever denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For M. CONWAY, EVELYN M. CONWAY, J.T., M.K., M.D.E., R.B., GRACE TILDEN, VIVIAN GREEN, GEORGE D. MITFORD, plaintiffs: Roy Walter Krieger, KRIEGER & ZAID, PLLC, Washington, DC.

For M. CONWAY, EVELYN M. CONWAY, M.K., M.D.E., R.B., GRACE TILDEN, VIVIAN GREEN, GEORGE D. MITFORD, plaintiffs: Mark Steven Zaid, KRIEGER & ZAID, PLLC, Washington, DC.

For GEORGE J. TENENT, CENTRAL INTELLIGENCE AGENCY, federal defendants: Sylvia T. Kaser, Gillian Flory, Marcia Kay Sowles, Sarah E. Freitas, David Michael Glass, Marcia N. Tiersky, U.S. DEPARTMENT OF JUSTICE, Washington, DC.

**JUDGES:** Ricardo M. Urbina, United States District Judge.

**OPINIONBY:** Ricardo M. Urbina

**OPINION:**

[\*135] **MEMORANDUM OPINION**

**GRANTING THE PLAINTIFFS' MOTION TO AMEND THE COMPLAINT; DENYING THE DEFENDANTS' MOTION TO SEVER**

**I. INTRODUCTION**

Employees of the United States Central Intelligence Agency ("CIA") brought this as-yet-uncertified class action against that agency, that agency's director, George Tenet, and 30 unnamed "John and Jane Does" (collectively "the defendants"). In a four-count amended complaint, six plaintiffs **[\*\*2]** allege that the CIA violated the Privacy Act of 1974, as amended, *5 U.S.C. § 552a* ("Privacy Act"), and several of their constitutional rights. In a proposed second amended complaint, which is a subject of this memorandum opinion, 15 plaintiffs altogether n1 allege that the CIA obstructs the plaintiffs' efforts to obtain assistance of counsel, thereby causing an invasion of privacy among other alleged violations of the Constitution. Additionally, the proposed second amended complaint states that beginning in 1997, the defendants' policy and practice associated with the alleged obstruction of counsel violates the Privacy Act. Furthermore, the plaintiffs claim that the defendants' alleged practice of obstruction of counsel violates Title VII of the Civil Rights Act of 1964, as amended, *42 U.S.C. § 2000e et seq* ("Title VII"). Before the court is the plaintiffs' motion to amend the complaint with their proposed second amended complaint pursuant to *Federal Rule of Civil Procedure 15*, and the defendants' motion to sever the claims of the six existing plaintiffs pursuant to *Federal Rule of Civil Procedure 21*. After consideration of the parties' **[\*\*3]** submissions and the relevant law, the court grants the plaintiffs' motion to amend the complaint and denies the defendants' motion to sever.

------

n1 The court notes that the second amended complaint seeks to add nine plaintiffs to the six existing plaintiffs currently involved in this case.

**II. BACKGROUND**

**A. Factual Background**

Case 1:05-cv-11468-RBC   Document 7-2   Filed 09/26/2005   Page 2 of 8

Page 2
216 F.R.D. 133, *; 2002 U.S. Dist. LEXIS 26668, **

On January 13, 1999, plaintiffs M.K. and Evelyn M. Conway filed the complaint initiating the present action. On April 12, 1999, the plaintiffs filed an amended complaint adding M.D.E., R.B., Grace Tilden, Vivian Green, and George D. Mitford as plaintiffs. n2 By order dated August 4, 1999, the court approved the voluntary dismissal without prejudice of plaintiff Green's claims. Order dated August 4, 1999. By order dated March 3, 2000, the court approved the voluntary dismissal without prejudice of plaintiff M.D.E.'s claims. Order dated March 3, 2000. On November 30, 2001, the plaintiffs filed a proposed second amended complaint adding [*136] J.T., J.B., C.B., P.C., P.C.1., C. Lynn, Nathan [**4] (P), Elaine Livingston (P), and Betty E. Yales (P) as nine new plaintiffs. n3 Second Am. Compl. ("2d Am. Compl.") at 2 n.2. The court identifies the six existing plaintiffs as M.K., Conway, Tilden, R.B., C.T., and Mitford. Beginning in 1997 and continuing to the present, the plaintiffs claim that the defendants' acts and omissions in denying the plaintiffs access to effective assistance of counsel violate the plaintiffs' rights under the *First*, *Fourth*, *Fifth*, and *Ninth Amendments of the United States Constitution*, the Privacy Act, and Title VII. 2d Am. Compl. PP 2-5, 444. Specifically, the nine new plaintiffs, in addition to the six existing plaintiffs, allege in the second amended complaint that the defendants' September 4, 1998 notice entitled "Access to Agency Facilities, Information, and Personnel by Private Attorneys and Other Personal Representatives" deprives the plaintiffs' counsel access to "official information" pertaining to the plaintiffs' employment matters. Id. P 23. The defendants' invocation of the September 4, 1998 notice has allegedly resulted in a denial of the plaintiffs' access to CIA documents, policies, procedures, and regulations, thereby preventing counsel [**5] from effectively advising the plaintiffs of their rights. Id. The plaintiffs claim that the defendants have "willfully and intentionally failed to maintain accurate, timely, and complete records pertaining to the plaintiffs in their personnel, security, and medical files so as to ensure fairness to [the] plaintiffs, thus failing to comply with *5 U.S.C. § 552a(e)(5)* [of the Privacy Act]." Am. Compl. P 116. What follows are the six existing plaintiffs' factual allegations relating to the inaccuracy of the records in question.

---

n2 The court notes for the record that several of the plaintiffs' names as they appear in this opinion are official pseudonyms assigned by the CIA. n3 According to the plaintiffs, the notation "(P)" indicates that the preceding name is a litigation pseudonym assigned by the CIA to a covert employee. Second Amended Compl. at 1 n.1.

Plaintiff M.K. complains of a letter of reprimand placed in her personnel file in April 1997, which concerns her responsibility [**6] for the loss of top-secret information contained on laptop computers sold at an auction. Id. PP 15,116a. Plaintiff Conway complains of a finding by the CIA Human Resources Staff or Personnel Evaluation Board concerning her ineligibility for foreign assignment. Id. PP 23, 116b. Plaintiff Conway additionally avers that the CIA notified her of this finding in March 1997. Id. P 23.

Plaintiff C.T. complains of a Board of Inquiry determination that she was not qualified for the position she held with the CIA. Id. PP 67, 116e. This Board of Inquiry convened after "early 1998." Id. PP 66-67. Plaintiff Mitford complains of receiving two negative Performance Appraisal Reports and two negative "spot reports" on unspecified dates in 1997, allegedly based on false information. Id. PP 81, 116g. Plaintiff R.B. complains of inaccurate counter-intelligence and polygraph information contained in his file. Id. P 116f. Plaintiff R.B.'s last polygraph exam took place in February 1996. Id. P 76. Plaintiff Tilden makes no allegations relating to Count IV of the amended complaint ("Violation of the Privacy Act").

**B. Procedural History**

On March 24, 1999, the defendants [**7] filed a motion to dismiss pursuant to *Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6)*. On March 23, 2000, this court issued a Memorandum Opinion and supplemental order granting in part and denying in part the defendants' motion to dismiss. *M.K. v. Tenet, 99 F. Supp. 2d 12 (D.D.C. 2000)*; Order dated Mar. 23, 2000. On April 20, 2001, the defendants filed a "motion for reconsideration" of that ruling pursuant to *Federal Rule of Civil Procedure 54(b)*, seeking to dismiss the plaintiffs' remaining due process and Privacy Act claims. On November 30, 2001, the plaintiffs filed a motion for leave to file the second amended complaint along with the proposed second amended complaint. On December 3, 2001, this court issued a Memorandum Opinion and supplemental order granting in part and denying in part the defendants' motion for reconsideration under *Rule 54(b)*. *M.K. v. Tenet, 196 F. Supp. 2d 8 (D.D.C. 2001)*; Order dated Dec. 3, 2001. On December 4, 2001, this court set out the parties' filing deadlines in its "Initial Scheduling and Procedures Order." Order dated Dec. 4, 2001. On January 2, 2002, the defendants filed their instant motion to sever [**8] the claims of the six existing plaintiffs pursuant to *Federal Rule of Civil Procedure 21*. On [*137] March 6, 2002, the plaintiffs filed a certificate of notification informing the CIA and the court of the 30 Doe defendants' identities. For the reasons that follow,

Case 1:05-cv-11468-RBC   Document 7-2   Filed 09/26/2005   Page 3 of 8

Page 3
216 F.R.D. 133, *; 2002 U.S. Dist. LEXIS 26668, **

the court grants the plaintiffs' motion to amend the complaint and denies the defendants' motion to sever.

### III. ANALYSIS

#### A. Legal Standard for a Motion to Amend

*Federal Rule of Civil Procedure 15(a)* provides that a "party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served ...." *FED. R. CIV. P. 15(a)*. Once a responsive pleading is filed, "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Id.; see also Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)*. The D.C. Circuit has held that for a trial court to deny leave to amend is an abuse of discretion unless the court provides a sufficiently compelling reason, such as "undue delay, bad faith, or dilatory motive[,] ... repeated failure to cure deficiencies by [previous] [**9] amendments [or] futility of amendment." *Firestone v. Firestone, 316 U.S. App. D.C. 152, 76 F.3d 1205, 1208 (D.C. Cir. 1996)* (quoting *Foman, 371 U.S. at 182*). The court may also deny leave to amend the complaint if it would cause undue prejudice to the opposing party. *Foman, 371 U.S. at 182*. In sum, a district court has wide discretion in granting leave to amend the complaint.

A court may deny a motion to amend the complaint as futile when the proposed complaint would not survive a *Federal Rule of Civil Procedure 12(b)(6)* motion to dismiss. *James Madison Ltd. v. Ludwig, 317 U.S. App. D.C. 281, 82 F.3d 1085, 1099 (D.C. Cir. 1996)* (internal citations omitted). When a court denies a motion to amend a complaint, the court must base its ruling on a valid ground and provide an explanation. *Id.* "An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." 3 Moore's Federal Practice § 15.15[3] (3d ed. 2000).

#### B. Legal Standard for Severance [**10]

Claims against different parties can be severed for trial or other proceedings under *Federal Rules of Civil Procedure 20(b), 21, and 42(b)*. *In re Vitamins Antitrust Litig., 2000 U.S. Dist. LEXIS 7397*, at * 74 (D.D.C. 2000) (Hogan, J.). Specifically, *Federal Rule of Civil Procedure 21* governs the misjoinder of claims. *Brereton v. Communications Satellite Corp., 116 F.R.D. 162 (D.D.C. 1987)* (Richey, J.) (holding that an appropriate remedy for misjoinder is severance of claims brought by the improperly joined party). *Rule 21* provides, in relevant part:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

*FED. R. Civ. P. 21*. In determining whether the parties are misjoined, the joinder standard of *Federal Rule of Civil Procedure 20(a)* applies. *Rule 20(a)* provides, in relevant part:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in [**11] the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

The purpose of *Rule 20* is to promote trial convenience and expedite the final resolution of disputes, thereby preventing multiple lawsuits, extra expense to the parties, and loss of time to the court as well as the litigants appearing before it. *Anderson v. Frances I. DuPont & Co., 291 F. Supp. 705, 711 (D. Minn. 1968)*. The determination of a motion to sever is within the discretion of the trial court. *In re Nat'l Student Marketing Litig., 1981 U.S. Dist. LEXIS 11650, 1981 WL 1617*, at *10 (D.D.C. 1981) [*138] (Parker, J.); *Bolling v. Mississippi Paper Co., 86 F.R.D. 6, 7 (N.D. Miss. 1979)*.

There are two prerequisites for joinder under *Rule 20(a)*: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence or series of transactions or occurrences, and (2) a question of law or fact common to all of the parties must arise in the action. *Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974)*. [**12] "In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of *Rule 20*, a case by case approach is generally pursued." *Id.*

Additionally, "the court should consider whether an order under *Rule 21* would prejudice any party, or would result in undue delay." *Id.; see also Brereton, 116 F.R.D. at 163* (stating that *Rule 21* must be read in conjunction with *Rule 42(b)*, which allows the court to sever claims in order to avoid prejudice to any party). The court may also consider whether severance will result in less jury confusion. *Henderson v. AT&T Corp., 918 F. Supp.*

Case 1:05-cv-11468-RBC   Document 7-2   Filed 09/26/2005   Page 4 of 8

Page 4

216 F.R.D. 133, *; 2002 U.S. Dist. LEXIS 26668, **

1059, 1063 (S.D. Tex. 1996) (directing in part that the claims of former employees from separate offices, which alleged various combinations of race, age, and national origin discrimination be severed because the claims were "highly individualized" and would be "extraordinarily confusing for the jury"); *but see In re Vitamins Antitrust Litig.*, 2000 U.S. Dist. LEXIS 7397, at *75-76 (stating that courts "consistently deny motions to sever where [the] plaintiffs allege that [the] defendants have engaged in a common [**13] scheme or pattern of behavior" (citing *Brereton*, 116 F.R.D. at 164)).

### C. The Court Grants the Plaintiffs' Motion to Amend the Complaint

The plaintiffs ask this court for leave to file their second amended complaint in order "to address deficiencies found by the court and to avail themselves of favorable intervening precedent," referring to the D.C. Circuit's decision in *Jacobs v. Schiffer*, 340 U.S. App. D.C. 221, 204 F.3d 259 (D.C. Cir. 2000). n4 Pls.' Mot. at 2, 5. The plaintiffs state that the D.C. Circuit's decision in *Jacobs* supports the plaintiffs' claim that the defendants have violated the plaintiffs' *First Amendment* rights by not allowing the plaintiffs to disclose to their attorneys government documents that are available to the plaintiffs. n5 *Jacobs*, 204 F.3d [*139] at 261; Pls.' Mot. at 5. Additionally, the plaintiffs seek to "address subsequent arguments raised by [the] defendants in their motion for reconsideration filed on April 20, 2001, and to add additional claims and plaintiffs, all related through [the] defendants' pattern and practice of obstruction of counsel." Pls.' Mot. at 2. Also, the plaintiffs seek [**14] to expand their allegations of the defendants' violations of their right to effective assistance of counsel under the *First Amendment* to a "wide range of wrongful conduct," as compared to the "plaintiffs' initial allegations that the defendants merely refused to provide access to government documents." *Id.* at 5.

n4 In *Jacobs*, the plaintiff, a Department of Justice ("DOJ") Attorney, retained private counsel to assist him in determining whether to file a complaint of wrongdoing against the DOJ Inspector General ("the defendant"). The defendant claimed that any disclosure of government documents to a third party, including the plaintiff's attorney, would require preapproval by the defendant under the Freedom of Information Act ("FOIA"), as amended, *5 U.S.C. § 552*. *Jacobs*, 204 F.3d at 261. The D.C. Circuit stated that "communication of government information by a federal government employee to the employee's attorney, where the attorney is bound to keep such information confidential, is not a public disclosure of such information ... the employee enjoys rights under the *First Amendment* to engage in such communications ...." *Id.* at 264. Quoting *Martin v. Lauer*, 222 U.S. App. D.C. 302, 686 F.2d 24, 34 (D.C. Cir. 1982) ("*Martin I*"), the D.C. Circuit recognized that "the government may protect its interest in prohibiting public disbursal of any sensitive information without intruding on the employee's substantial interest in freely discussing his legal rights with his attorney." *Jacobs*, 204 F.3d at 265.

[**15]

n5 The court recognizes the "well-established [rule] that restrictions on the *First Amendment* rights of public employees are to be tested by balancing the employees' interest in the speech against the government's interest in the restriction." *Martin v. Lauer*, 238 U.S. App. D.C. 286, 740 F.2d 36, 45 (D.C. Cir. 1984) ("*Martin II*") (citing *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 20 L. Ed. 2d 811, 88 S. Ct. 1731 (1968)). The court, however, need not employ a balancing test at this stage of the case. Rather, the court only needs to determine if the plaintiffs' proposed amendment would be futile. Futility is determined by whether the proposed amended complaint would survive a *Federal Rule of Civil Procedure 12(b)(6)* motion. 3 Moore's Federal Practice § 15.15[3] (3d ed. 2000) (citing *Sinay v. Lamson & Sessions, Co.*, 948 F.2d 1037, 1041-42 (6th Cir. 1991)). In this case, the court must view all the facts in the light most favorable to the plaintiffs. *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957) (stating that a court should grant leave to amend whenever there are facts that state a valid legal claim and thereby support amendment)). In conjunction with the *Pickering* and *Martin* line of precedent, it is conceivable that the plaintiffs' amendment is not futile because it contains "facts [that] support relief." *Id.* at 123; *Martin I*, 686 F.2d at 26; *Martin II*, 740 F.2d at 36.

[**16]

The defendants challenge the plaintiffs' proposed amendment asserting that the plaintiffs' "factually diverse" claims are unrelated to each other. Defs.' Opp'n at 1-2. Specifically, the defendants argue that "neither the existing six plaintiffs nor the proposed nine plaintiffs have alleged claims factually in common with one an-

Case 1:05-cv-11468-RBC   Document 7-2   Filed 09/26/2005   Page 5 of 8

Page 5
216 F.R.D. 133, *; 2002 U.S. Dist. LEXIS 26668, **

other." *Id.* According to the defendants, the "wide range of wrongful conduct" that the plaintiffs allege in their proposed second amended complaint arises out of "unique sets of facts and circumstances, involving completely different types of agency actions, proceedings or personnel matters, such as employment terminations, revocations of security clearances, forced resignations, disciplinary proceedings, failure to obtain promotions ... and retaliation." *Id.* The plaintiffs' proposed second amended complaint, however, cites to numerous obstruction-of-counsel situations, including denying counsel access to requested CIA policies, procedures, and documents upon request. 2d Am. Compl. PP 24-27, 36-37, 64. Additionally, the plaintiffs allege that when they requested the presence of counsel, the defendants failed to accommodate that request and attempted [**17] to restrict the plaintiffs' access to counsel. *Id.* PP 59, 62, 65.

The defendants counter that they would suffer "undue prejudice" if the court grants the plaintiffs' motion to amend. Defs.' Opp'n at 6 (citing *Atchinson v. District of Columbia, 315 U.S. App. D.C. 318, 73 F.3d 418, 425 (D.C. Cir. 1996)* (quoting *Foman, 371 U.S. at 182*)). The defendants further assert that the burden on the defendants "against fifteen substantially different sets of facts and legal arguments in one case far outweighs any practical benefit that might accrue from considering" the cases of the six existing plaintiffs and the nine new plaintiffs. *Id.*

**1. The Plaintiffs Have Not Repeatedly Failed to Cure Deficiencies by Previous Amendments**

The plaintiffs seek leave to amend their complaint to address prior deficiencies n6 named by the court in its March 2000 Memorandum Opinion and to avail themselves of intervening legal precedent. Pls.' Mot. at 5. As such, the court deems these justifications reasonable and concludes that the deficiencies that the plaintiffs seek to address are not "repeated failures to cure deficiencies by amendments previously allowed." [**18] *Foman, 371 U.S. at 182*.

n6 The plaintiffs' "prior deficiencies" that they seek to remedy through the instant motion refer to the court's March 2000 dismissal of three of the plaintiffs' claims. Pls.' Mot. at 3. In dismissing those three claims, the court held that: (1) the plaintiffs lacked standing to assert a *Fifth Amendment* Equal Protection challenge to the CIA's September 4, 1998 notice; (2) the plaintiffs failed to exhaust their administrative remedies before seeking to compel the defendants to amend records under the Privacy Act, *5 U.S.C. § 552a(d)(3)*, and; (3) the plaintiffs failed to assert a *First Amendment* violation by specifically alleging only that they were prevented from disclosing government documents to their counsel, which invokes no protected *First Amendment* right. *M.K., 99 F. Supp. 2d at 28-30, 36*; Pls.' Mot. at 3.

In determining whether undue prejudice will result, however, the D.C. Circuit has suggested that the court consider whether [**19] amendment of a complaint would require additional discovery. *Atchinson, 73 F.3d at 426* (citing *Alley v. Resolution Trust Corp., 299 U.S. App. D.C. 363, 984 F.2d 1201, 1208 (D.C. Cir. 1993)* (remanding the case for the district court to allow amendment where the plaintiffs assured the court of appeals that additional discovery would be unnecessary)). If additional discovery will result, then this factor may weigh negatively on the plaintiffs' instant motion to [*140] amend the complaint. *Id.* The plaintiffs point out that the case at bar has yet to enter the discovery stage. Pls.' Reply at 1-2. The defendants, however, fear the potential burdens associated with excessive discovery and argue that the "myriad claims presented by each plaintiff and the number of defendants" in the second amended complaint would make it "incredibly burdensome to prepare an answer, conduct discovery, or file a dispositive motion." Defs.' Opp'n at 26. Furthermore, the defendants argue that "discovery in a case that essentially challenges and finds fault with nearly every agency proceeding and practice would be unmanageable, particularly where the business of the defendant is national [**20] security and intelligence gathering." *Id.* at 28. But the defendants misconstrue the additional discovery factor as one that discourages discovery altogether. In a case such as this in which discovery has yet to occur, it would defy logic to deny the plaintiffs an opportunity to amend the complaint on the basis that additional discovery will result. While it is conceivable that a great deal of discovery may result from the addition of new claims, 30 defendants, and nine plaintiffs in the proposed second amended complaint, this does not constitute evidence of undue prejudice to deny the plaintiffs' instant motion. *Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)* (stating that the plaintiffs did not unduly prejudice the defendants because the plaintiffs requested leave to amend when no trial date was set by the court and the defendants had not filed a motion for summary judgment).

**2. The Plaintiffs' Proposed Second Amended Complaint Satisfies Rule 8's Requirements**

The defendants challenge the plaintiffs' proposed second amended complaint under *Federal Rule of Civil Procedure Rule 8*, stating that the plaintiffs' pleading "is

Case 1:05-cv-11468-RBC   Document 7-2   Filed 09/26/2005   Page 6 of 8

Page 6

216 F.R.D. 133, *; 2002 U.S. Dist. LEXIS 26668, **

not a pleading **[**21]** [that] [the] defendants can reasonably answer or that can reasonably be expected to control discovery." Defs.' Opp'n at 26. In Atchinson, the D.C. Circuit stated that *Rule 8(a)(2)* requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *73 F.3d at 421*. Additionally, *Rule 8(e)* states that "each averment of a pleading shall be simple, concise, and direct" and further instructs courts to construe "all pleadings ... to do substantive justice." *FED. R. CIV. P. 8(e)*; *Atchinson, 73 F.3d at 421*. Accordingly, "under the Federal Rules, the purpose of pleading is simply to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests,' not to state in detail the facts underlying the complaint." *Id.* (citing *Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*; *Sinclair v. Kleindienst, 229 U.S. App. D.C. 13, 711 F.2d 291, 293 (D.C. Cir. 1983))*.

In this case, the plaintiffs' first amended complaint was 44 pages in length compared to the plaintiffs' proposed 219-page second amended complaint. *Compare* **[**22]** Am. Compl. *to* 2d Am. Compl. Although the defendants insist that the court should strike the plaintiffs' proposed second amended complaint, the defendants fail to point out any specific *Rule 8* violations. Defs.' Opp'n at 27. Stating only that the second amended complaint is a "detailed and lengthy pleading," the defendants also cite to several cases where courts have denied amendment on a variety of distinguishable grounds. *Id.* at 26-27 (citations omitted). n7

---

n7 The court notes that the defendants' opposition brief fails to state how any of the defendants' cited cases are analogous to the facts of the instant case. In other words, the defendants cite to cases without providing any analysis as to how those cases could apply to the instant case or how those cases could persuade this court to rule in the defendants' favor. Without more than conclusory statements advanced by the defendants, the court deems the defendants' position unqualified and insufficiently supported by legal authority.

---

**[**23]**

The court concludes that the length of the plaintiffs' proposed second amended complaint is reasonable, considering that the plaintiffs have added new claims, new plaintiffs, and new defendants. In the plaintiffs' second amended complaint, each of the 15 plaintiffs' individual averments are approximately 12 pages in length, while the remainder of the second amended complaint requests several forms of relief and alleges common questions of law and fact. 2d Am. **[*141]** Compl. PP 14-555. While the plaintiffs certainly could "state [in less] detail the facts underlying" their claims, the court notes that most of the individual paragraphs of their proposed second amended complaint are "simple, concise, and direct." *FED. R. CIV. P. 8(e)*; *Atchinson, 73 F.3d at 421*. For example, in stating facts to construe her privacy act claim, plaintiff Tilden states in the second amended complaint that:

> on or about August 8, 2000, plaintiff Tilden reviewed her CIA Office of Medical Services ("OMS") file and first learned that it omitted a favorable psychological evaluation performed on her in 1993, which determined [that] she was fit for overseas assignment. Upon inquiry, OMS advised **[**24]** her to examine her medical file to locate the psychological evaluation.

2d Am. Compl. P 157. Moreover, the court follows *Rule 8(e)*'s mandate that courts must construe "all pleadings ... to do substantive justice." *FED. R. CIV. P. 8(e)*; *Atchinson, 73 F.3d at 421*. In doing so, the court determines that there is no basis for the defendants' *Rule 8* challenge.

Indeed, to bar the plaintiffs from amending their complaint would contravene *Rule 15(a)*'s underlying policy of granting leave to amend freely as justice requires. *Foman, 371 U.S. at 182*. This is not to say that in every instance, the court must allow the requested amendment, but to conclude otherwise in this case would positively bar the plaintiffs from asserting claims that may prove meritorious. Besides, as stated earlier, the case has yet to enter the discovery phase, which distinguishes this case from other cases where amendment is sought after discovery has started or closed. *Atchinson, 73 F.3d at 426* (citing *Williamsburg Wax Museum, 258 U.S. App. D.C. 124, 810 F.2d 243, 247-48 (D.C. Cir. 1987)* (affirming a district court's denial of leave to amend more than seven years after **[**25]** the filing of the initial complaint because new discovery was necessary)); *Alley, 984 F.2d at 1208*.

### D. The Court Denies the Defendants' Motion to Sever the Claims of the Six Existing Plaintiffs

The court now addresses the defendants' instant motion to sever. In the defendants' view, the plaintiffs' obstruction-of-counsel claim consists of "a series of unrelated, isolated grievances, unique to each plaintiff, each of which would have to be decided on its own set of law and facts, and each potentially presenting a 'novel' constitutional claim." Defs.' Reply at 1 (quoting *M.K., 99 F.*

Case 1:05-cv-11468-RBC   Document 7-2   Filed 09/26/2005   Page 7 of 8

Page 7

216 F.R.D. 133, *; 2002 U.S. Dist. LEXIS 26668, **

*Supp. 2d at 30*. Thus, the defendants ask this court to sever the claims of the six existing plaintiffs n8 under *Federal Rule of Civil Procedure 21*. Defs.' Mot. at 5, 8. By the same token, the defendants ask the court to deny the plaintiffs' proposed *Rule 20* joinder of the nine new plaintiffs and the 30 new "Doe" defendants. Defs.' Mot. at 3.

> n8 In this section of its opinion, when referring to the "six existing plaintiffs," the court refers to those plaintiffs that were party to this litigation prior to the second amended complaint's addition of the nine new plaintiffs. As such, the phrase "six existing plaintiffs" only includes plaintiffs M.K., Conway, Tilden, R.B., C.T., and Mitford. This term is consistent with the terminology employed by the parties in their respective briefs.

**[**26]**

The plaintiffs, however, argue that the court should not sever the six existing plaintiffs because both prongs of *Rule 20(a)*'s joinder requirement are satisfied. The court need not extensively address the joinder of the six existing plaintiffs' new claims because the court is convinced that under the unrestricted joinder provision of *Federal Rule of Civil Procedure 18*, such joinder of new claims is possible. 3 Moore's Federal Practice § 21.02[1] (3d ed. 2000). To wit, it suffices to state that "*Rule 18* permits the claimant to join all claims the claimant may have against the defendant regardless of transactional relatedness." *Id.* As such, the court focuses its analysis on the *Rule 20* joinder issue raised by the defendants.

The plaintiffs cite to the first prong of *Rule 20(a)*, also known as the "transactional test," and argue that the defendants' acts and omissions pertaining to the plaintiffs' obstruction-of-counsel claims are "logically related" events that the court can regard as "arising out of the same transaction, occurrence or series of transactions or occurrences." *FED. R. CIV. P. 20(a)*; Pls.' Reply at 10 (quoting *Mosley, 497 F.2d at 1333*). In **[*142]** citing **[**27]** to *Mosley,* the plaintiffs assert that "all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Mosley, 497 F.2d at 1330* (citing 7 C. Wright, Federal Practice & Procedure § 1653 at 270 (1972 ed.)); Pls.' Reply at 15.

The court agrees with the plaintiffs' assertion that "logically related" events may consist of an alleged "consistent pattern of ... obstruction of security-cleared counsel by [the] defendants." 2d Am. Compl. P 430. Specifically, each of the existing plaintiffs allege that they were injured by the defendants through employment-related matters, such as retaliation, discrimination, and the denial of promotions and overseas assignments. 2d Am. Compl. PP 36-37, 64-65, 129-30, 132-33, 140, 142, 148-49, 154, 156, 176-77, 190, 200, 209-12, 221, 224, 229-30, 232. After each employment dispute began, each of the plaintiffs or the plaintiffs' counsel sought access to employee and agency records. *Id.* The defendants, however, denied and continue to deny the plaintiffs and/or their counsel access to the plaintiffs' requested information. *Id.* As such, **[**28]** without this relevant information, the plaintiffs cannot effectively prepare or submit administrative complaints to the defendants or attempt to seek legal recourse through the applicable Title VII discrimination, Privacy Act, or *First*, *Fifth*, and *Seventh Amendment* claims. *Id.* The court concludes that the alleged repeated pattern of obstruction of counsel by the defendants against the plaintiffs is "logically related" as "a series of transactions or occurrences" that establishes an overall pattern of policies and practices aimed at denying effective assistance of counsel to the plaintiffs. *Mosley, 497 F.2d at 1331, 1333*; Pls.' Reply at 16. In this case, each plaintiff alleges that the defendants' policy and practice of obstruction of counsel has damaged the plaintiffs. *Id.* Further, each plaintiff requests declaratory and injunctive relief. 2d Am. Compl. P 465. Thus, the court determines that each plaintiff in this case has satisfied the first prong of *Rule 20(a)*. *FED. R. CIV. P. 20(a)*; see also *Mosley, 497 F.2d at 1331, 1333*.

Turning to the second prong of *Rule 20(a)*, the plaintiffs aver that each of their claims are related by a common question **[**29]** of law or fact. *FED. R. CIV. P. 20(a)*; Pls.' Reply at 15. Specifically, one question of law or fact that is common to each of the six existing plaintiffs is whether the defendants' September 4, 1998 notice restricting the plaintiffs' counsel from accessing records intruded on the plaintiffs' substantial interest in freely discussing their legal rights with their attorneys. *Jacobs, 204 F.2d at 265* (quoting *Martin, 686 F.2d at 32*); 2d Am. Compl. P 23. Indeed, the question of law or fact that is common to all may be whether the "defendants have engaged in a common scheme or pattern of behavior" that effectively denies the plaintiffs' legal right to discuss their claims with their counsel. *FED. R. CIV. P. 20(a)*; *In re Vitamins Antitrust Litig., 2000 U.S. Dist. LEXIS 7397, at *75-76*; *Brereton, 116 F.R.D. at 164*. The plaintiffs also allege that the defendants' policy or practice of obstruction of counsel "is implemented through [a] concert of action among CIA management and the Doe Defendants," who are now named in the second amended complaint. Pls.' Reply at 16; 2d Am. Compl. PP 547-52. In light of the aforementioned **[**30]** common questions of law and fact, the court concludes that the plaintiffs meet the second prong of *Rule 20(a)*. *FED. R. CIV. P. 20(a)*.

Case 1:05-cv-11468-RBC  Document 7-2  Filed 09/26/2005  Page 8 of 8

Page 8
216 F.R.D. 133, *; 2002 U.S. Dist. LEXIS 26668, **

The court need not stop here in its *Rule 20(a)* analysis. Indeed, it appears that there exists a further basis supporting the plaintiffs' position challenging severance; Each plaintiff alleges common claims under the Privacy Act. Pls.' Reply at 22. Specifically, the plaintiffs' second amended complaint alleges that the defendants "maintained records about the plaintiffs in unauthorized systems of records in violation of *§ 552a(e)(4) of the Privacy Act*" and that the defendants "failed to employ proper physical safeguards for records in violation of *§ 552a(e)(10) of the Privacy Act.*" *Id.;* 2d Am. Compl. PP 472, 477. The plaintiffs also allege that the defendants wrongfully denied the plaintiffs and plaintiffs' counsel access to records in violation of *§ 552a(d)*(1 of the Privacy Act and "illegally maintained specific records describing their *First Amendment* activities in violation of *§ 552a(e)(7) of the Privacy Act.*" 2d Am. **[*143]** Compl. PP 444, 489, 508-17; Pls.' Reply at 22. Furthermore, the plaintiffs' first amended complaint contains similar allegations. **[**31]** Through their alleged Privacy Act violations, the plaintiffs are united by yet another "question of law or fact" that is common to each of them. *FED. R. CIV. P. 20(a)*. Accordingly, the court concludes that the plaintiffs satisfy the second prong of *Rule 20(a)* and, thus, the court denies the defendants' motion to sever.

On a final note, in denying the defendants' motion to sever, the court defers to the policy underlying *Rule 20*, which is to promote trial convenience, expedite the final determination of disputes, and prevent multiple lawsuits. *Mosley, 497 F.2d at 1332*. Indeed, the Supreme Court addressed this important policy in *United Mine Workers of America v. Gibbs, 383 U.S. 715, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966)*, stating that "under the rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." *Id. at 724*. In accordance with *Gibbs,* the court believes that the joinder or non-severance of the six existing plaintiffs and their new claims under *Rule 20(a)* will promote trial convenience, expedite **[**32]** the final resolution of disputes, and act to prevent multiple lawsuits, extra expense to the parties, and loss of time to the court and the litigants in this case. *Gibbs, 383 U.S. at 715*; *Anderson, 291 F. Supp. at 711*. For this added reason, the court denies the defendants' motion to sever.

### IV. CONCLUSION

For all of the foregoing reasons, the court grants the plaintiffs' motion to amend and denies the defendants' motion to sever. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 30th day of July 2002.

Ricardo M. Urbina

United States District Judge

### ORDER

**GRANTING THE PLAINTIFFS' MOTION TO AMEND THE COMPLAINT;**

**DENYING THE DEFENDANTS' MOTION TO SEVER**

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this 30th day of July 2002, it is

**ORDERED** that the plaintiffs' motion for leave to file the second amended complaint is **GRANTED;** and it is

**FURTHER ORDERED** that the defendants' motion to sever is **DENIED;** and it is

**ORDERED** that the defendants file a response to the plaintiffs' **[**33]** second amended complaint within 60 days from the date of this order.

**SO ORDERED.**

Ricardo M. Urbina

United States District Judge

LEXSEE 185 F.R.D. 139

DIANE M. PURICELLI and CHARLES E. HUGHES, Plaintiffs, v. CNA
INSURANCE COMPANY, Defendants.

Civil No. 98-CV-0359

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
NEW YORK

185 F.R.D. 139; 1999 U.S. Dist. LEXIS 11052

April 14, 1999, Decided
April 14, 1999, Filed

**DISPOSITION:** [**1] Defendant's motion under *Fed. R. Civ. P. 20(a)* and *21*, and alternatively under *Fed. R. Civ. P. 42(b)*, denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** PAUL E. DAVENPORT, ESQ., LOMBARDI, REINHARD LAW FIRM, Albany, New York, for Plaintiffs.

STEVEN L. GILLMAN, ESQ., FOX, GROVE LAW FIRM, Chicago, Illinois, for Defendants.

**JUDGES:** RALPH W. SMITH, JR., United States Magistrate Judge.

**OPINIONBY:** RALPH W. SMITH, JR.

**OPINION:**

  [*140]  **MEMORANDUM - DECISION AND ORDER**

Plaintiffs, Diane Puricelli and Charles Hughes, jointly filed suit against their former employer, defendant CNA, seeking relief for alleged violations of the Age Discrimination in Employment Act of 1967 (ADEA), the New York State Human Rights Law, and intentional infliction of emotional distress. Defendant now moves this court pursuant to *Fed. R. Civ. P. 20(a)* and *21* to sever the claims of plaintiffs Puricelli and Hughes on the ground that the claims are misjoined because they neither arise out of the same transaction or occurrence or present common questions of law or fact. In the alternative, defendant seeks relief under *Fed. R. Civ. P. 42(b)* in the form of separate trials. In order to determine whether plaintiffs' claims meet the permissive [*141] joinder requirements of Fed. [**2] R. Civ. P. 20(a), a complete factual review is necessary.

*A. Plaintiff Puricelli*

Plaintiff Puricelli was employed by Continental Insurance Company in Glens Falls, New York, from March 1986 through May 1995. Continental was taken over by defendant CNA in May 1995. Following the takeover, Puricelli continued her employment and held the position of litigation supervisor until July 1996, when she was allegedly demoted to bodily injury adjuster. Puricelli worked in that capacity until December 27, 1996, the date of her alleged termination. Puricelli then alleges that defendant embarked on a campaign to remove older employees from the claims department, involving disparaging remarks and harassment related to Puricelli's age, which culminated in her discharge on an allegedly pretextual ground and replacement by a younger employee.

Shortly after the takeover in June 1995, Puricelli was given a performance evaluation by Kevin Romer, to whom she reported, and received a rating of "3" (performance meets expectations). Following the review, Romer counseled Puricelli on the specific areas of her performance that needed improvement. In June 1996, Puricelli was placed on a 30-day [**3] probationary action plan designed to correct those performance problems. By the end of the third week of the 30-day period, Puricelli was given the option of taking a demotion to litigation adjuster, or to continue the plan and possibly face termination if her performance did not improve by the end of the period. Puricelli opted for the demotion, resulting in a $ 3,000 reduction in salary, and thereafter reported to Mark Romano. Romano evaluated Puricelli in September 1996 and rated her at a "3" (performance meets expectations). In light of the favorable recommendation, Romano recommended Puricelli for a "spot bonus". The bonus was approved by Romer, but before

Case 1:05-cv-11468-RBC   Document 7-3   Filed 09/26/2005   Page 2 of 4

Page 2
185 F.R.D. 139, *; 1999 U.S. Dist. LEXIS 11052, **

disbursement, Puricelli notified Romano in December 1996 that she had accepted a position with another insurance company.

### B. Plaintiff Hughes

Plaintiff Hughes was employed by Continental Insurance Company from 1977 to May 1995, and then by CNA until his alleged termination on November 8, 1996. After the takeover, Hughes initially occupied the position of litigation adjuster until he was allegedly demoted to liability bodily injury adjuster in July 1996. Hughes similarly claims that defendant orchestrated a campaign [**4] to remove older employees from the claims department, and that his alleged discharge and replacement by a younger employee was pretextual.

The events preceding Hughes' termination are more involved. From the time of the takeover until August 1996, Hughes reported to Puricelli, who at that time was a claims supervisor. During the summer of 1996, defendant reorganized the claims department to reflect its "aggressive new philosophy of cost-effective management." As a result of the restructuring, Hughes was transferred from the litigation unit to the represented unit. The transfer did not affect his title or pay. Hughes was thereafter evaluated by Romano in September 1996 and was given a rating of "4" (performance does not meet the minimum requirements). The basis for the low rating was Hughes' inability to learn defendant's new computer system as well as his "worst case scenario" approach to claims. No disciplinary action was taken. In October 1996, Hughes notified Romano that he planned to retire and accept an offer with another insurance company.

In support of its motion, defendant asserts that the circumstances underlying plaintiffs' claims are so factually distinct that the requirements [**5] of permissive joinder have not been satisfied and alternatively that a joint trial would cause undue prejudice and confusion. In opposition to defendant's severance motion, plaintiffs concede that the individual circumstances surrounding their respective claims vary, but they contend that both were subject to a similar pattern of discriminatory action by the defendant, thus bringing their claims within the purview of Rule 20(a).

### DISCUSSION

*Rule 21 of the Fed. R. Civ. P.* addresses the misjoinder of parties. The rule is silent with regard to the grounds for misjoinder, [*142] but it is well-settled that parties are misjoined when the preconditions of permissive joinder, set forth in Rule 20(a), have not been satisfied. *Glendora v. Malone, 917 F. Supp. 224, 227 (S.D.N.Y. 1996); Fong v. Rego Park Nursing Home, 1996 U.S. Dist. LEXIS 22289, *6, No. 95 Civ. 4445, 1996 WL 468660* (E.D.N.Y. Aug. 7, 1996). Pursuant to Rule 20(a), proper joinder of parties requires the satisfaction of two criteria: (1) the right to relief sought by all plaintiffs must arise out of the same transaction or occurrence, or series of transactions or occurrences; and (2) a common question of law or fact as to [**6] all plaintiffs must arise in the action. *Fed. R. Civ. P. 20(a); Blesedell v. Mobil Oil Co., 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989).* A determination on the question of joinder of parties lies within the discretion of the district court. *Mosley v. General Motors Corp., 497 F.2d 1330, 1332 (8th Cir. 1974)* (citing 7 C. Wright, *Federal Practice and Procedure*, § 1653 at 270 (1972)).

The well-established policy underlying permissive joinder is to promote trial convenience and expedite the resolution of lawsuits. *Blesedell, 708 F. Supp. at 1421.* The Supreme Court has recognized this policy, stating that "the impulse [under the Rule] is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs, 383 U.S. 715, 724, 86 S. Ct. 1130, 1137, 16 L. Ed. 2d 218 (1966).* As such, severance is appropriate only where the prerequisites of permissive joinder have not been satisfied. *Glendora, 917 F. Supp. at 227.*

### A. Same Transaction or Occurrence

Courts have [**7] generally adopted a case-by-case approach in determining whether plaintiffs' claims constitute a "single transaction or occurrence" for purposes of Rule 20. *Mosley, 497 F.2d at 1333; Blesedell, 708 F. Supp. at 1421.* In attempting to affix a definition to "transaction or occurrence," courts have found *Fed. R. Civ. P. 13(a)* to be particularly instructive, and have concluded with reference to that Rule that the phrase encompasses "all logically related claims." *Mosley, 497 F.2d at 1333; Blesedell, 708 F. Supp. at 1421.*

The presence of material dissimilarities between the substantive allegations of the joined plaintiffs does not automatically bring such claims outside the "same transaction or occurrence" language. *Fong, 1996 WL 468660 at *1; Blesedell, 708 F. Supp. at 1421-22; Hohlbein v. Heritage Mutual Ins. Co., 106 F.R.D. 73, 77 (E.D. Wis. 1985).* In Fong, three plaintiffs joined in a discrimination suit brought against their employer. The plaintiffs were terminated under different circumstances, at different times, and by two different named defendants, approximately [**8] one year apart. *Fong, 1996 WL 468660* at *3. The court denied defendants' motion for misjoinder because the plaintiffs alleged "actions by Defendants which subjected them to intense scrutiny and strict punishment." Id. In Blesedell, three female employees sued their employer for sex discrimination and sexual harassment. *Blesedell, 708 F. Supp. at 1410.* Defendant's mo-

Case 1:05-cv-11468-RBC   Document 7-3   Filed 09/26/2005   Page 3 of 4

Page 3

185 F.R.D. 139, *; 1999 U.S. Dist. LEXIS 11052, **

tion for severance was denied because all three plaintiffs alleged injury by the same general policy of permitting discrimination against women. *Id.* at 1422. In Hohlbein, a motion for severance was denied where four plaintiffs, although employed at different times and in different positions, alleged a continuing pattern and practice with respect to defendant's employment of unrelated individuals. *Hohlbein, 106 F.R.D. at 77.*

In support of its motion, defendant contends that there is no logical relationship between plaintiffs' claims in light of the myriad differences which distinguish their respective claims. Plaintiffs, on the other hand, contend that their claims meet the "logically related" threshold given the similar pattern of discriminatory **[**9]** conduct to which they were both subjected. Both plaintiffs received poor or borderline performance evaluations, and the basis for those evaluations was the same; i.e., failure to meet the new and aggressive standards (albeit different ones) implemented by CNA after the takeover. Plaintiffs further assert that they both were demoted and replaced by younger employees. In short, plaintiffs claim that they were both "subjected to a similar method of removal from their **[*143]** pre-takeover positions through performance evaluations, performed by . . . Mr. Romer, during the same time period, and left the employ of CNA within one month of each other."

Plaintiffs have satisfied the "same transaction or occurrence" prong of the Rule 20(a) analysis. Despite the differences in the factual underpinnings of their respective claims, plaintiffs have alleged a pattern of conduct, commencing after the takeover of Continental, which discriminated against them on the basis of age. Both plaintiffs similarly allege that the basis for the adverse employment decisions was their failure to meet the demands of defendant's new and aggressive management style.

### B. Common Question of Law or Fact

The second **[**10]** requirement of Rule 20(a) is that the action raises a question of law or fact common to all the parties. The Rule does not require the commonality of all questions of law and fact raised in the dispute, rather, the requirement is satisfied if there is any question of law or fact common to all parties. *Blesedell, 708 F. Supp. at 1422.*

Plaintiffs have also satisfied the "common question of law or fact" prong of the Rule 20(a) analysis. Many of the same factors set forth above support a finding of commonality here as well. Initially, both plaintiffs have alleged claims under the ADEA, the New York State Human Rights Law, and intentional infliction of emotional distress. In addition, both plaintiffs allege actions, occurring after the takeover, that were selectively applied to them on the basis of age. Both plaintiffs also implicate Kevin Romer as a key player in the employment decisions set forth in the complaint.

### C. Separate Trials under Fed. R. Civ. P. 42(b)

In the alternative, defendant asks this court to grant its motion pursuant to *Fed. R. Civ. P. 42(b)* for separate trials on the ground that a joint trial will cause prejudice to the defendant and **[**11]** lead to confusion. Pursuant to Rule 42(b), the court may order separate trials of any claims or issues in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy. *Amato v. Saratoga Springs, 170 F.3d 311, 1999 WL 137349,* at *5 (2d Cir. 1999); *Smith v. Lightning Bolt Productions, Inc., 861 F.2d 363, 370 (2d Cir. 1988).*

Defendant contends that both confusion and prejudice warrant an order of separate trials. *Grayson v. K-Mart Corp., 849 F. Supp. 785 (N.D. Ga 1994);* Accord *Henderson v. AT&T, 918 F. Supp. 1059, 1063 (S.D. Texas 1996).* According to defendant, confusion will result from the varying factual underpinnings of the plaintiffs' individual claims. In terms of prejudice, defendant asserts that although plaintiffs must each establish defendant's liability to them individually, a joint trial may bias the jury against defendant generally.

In support of its argument, defendant relies heavily upon Grayson and Henderson. A review of those cases instantly reveals, however, that the factors which motivated the courts to order separate trials are **[**12]** not present in the case at bar. In Grayson, eleven plaintiffs filed an age discrimination suit against their employer. *Grayson, 849 F. Supp. at 791.* A joint trial of plaintiffs' claims would have involved eleven different factual situations, eleven sets of work histories, eleven sets of witnesses and testimony, and the laws of four different states. Id. Accord Henderson, decided in the context of a Rule 21 motion, involved five plaintiffs asserting more than twenty different claims. Accord *Henderson, 918 F. Supp. at 1061.* Finding a joint trial in such a situation likely to be extraordinarily confusing, the court ordered severance of three of the plaintiffs' claims. *Id. at 1064.* It is also worthy of note that the Accord Henderson court permitted two of the plaintiffs to proceed jointly, despite differences in their claims, finding that the jury could easily keep the claims of two plaintiffs separate.

The case at bar stands in stark contrast to the factual situations before the Grayson and Accord Henderson courts. Here, there are two plaintiffs, and each plaintiff has alleged the very same claims; i.e., violations **[**13]** of the ADEA, the New York State Human Rights **[*144]** Law, and intentional infliction of emotional distress. As such, the prejudice and confusion contemplated by the

185 F.R.D. 139, *; 1999 U.S. Dist. LEXIS 11052, **

defendant is not sufficient to warrant separate trials. At the very least, any prejudice or confusion can be remedied by a carefully drafted jury instruction.

## CONCLUSION

On the basis of the foregoing, it is

**ORDERED** that defendant's motion under *Fed. R. Civ. P. 20(a)* and *21*, and alternatively under *Fed. R. Civ. P. 42(b)*, is denied and the plaintiffs shall be allowed to proceed jointly.

DATED: April 14, 1999

Albany, New York

Ralph W. Smith, Jr.

United States Magistrate Judge