UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDRA BASTIEN, ROUDY BELUS, MARIBEL CASTRO VELAZQUEZ, TONI GABRIEL, MAURICE JOHNSON, MARLO LARRY, DONNA LEE, COURTNEY MYLES and CARLA VICENTE, in her personal capacity and on behalf of her minor child, DESTINY RAMOS,<br><br>                                    Plaintiffs,<br><br>            v.<br><br>WAL-MART STORES, INC.,<br>                                    Defendant. | Civil Action<br>No. 05-CV-11468-MDW |

## PLAINTIFFS' OPPOSITION TO WAL-MART'S MOTION TO SEVER

Plaintiffs Bastien, Belus, Castro Velazquez, Gabriel, Johnson, Larry, Lee, Myles and

Vicente oppose the motion of defendant Wal-Mart Stores, Inc. ("Wal-Mart") for severance under

Fed. R. Civ. Pr. 21 as well as Wal-Mart's alternative request for separate trials under Fed. R. Civ.

Pr. 20(b) and 42(b).[1]  Because (i) the plaintiffs allege that Wal-Mart has engaged in a common

pattern and practice of targeting minority shoppers as suspected shoplifters and subjecting them

to unwarranted searches, detention, and harassment; (ii) all of the plaintiffs seek the same relief

under several state and federal civil rights laws as well as under various tort and contract

theories, and (iii) all of the plaintiffs' stories share common factual elements, the plaintiffs

satisfy the joinder requirements set forth in Fed. R. Civ. P. 20(a).  Furthermore, where discovery

has not yet even commenced, Wal-Mart's  request under Rules 20(b) and 42 should be denied.

---

[1] After Wal-Mart moved to sever the ten original plaintiffs' claims, the plaintiffs moved to amend their complaint to add three additional plaintiffs, Alezalee Ayala, Chris Sandiford and Michelle Tyler.  For the reasons set forth in this opposition as well as those set forth in the plaintiffs' Motion for Leave to File First Amended Complaint, the three additional plaintiffs, like the ten original plaintiffs, meet the requirements for permissive joinder.

**Factual Background**

The Complaint sets forth five incidents of discrimination suffered by ten Wal-Mart shoppers of various races, ethnicities and national origins.  In one incident, three teens, Alexandra Bastien, (who is Haitian), Toni Gabriel (who is Trinidadian) and Courtney Myles (who is Caucasian), went shopping together at the Avon Wal-Mart, only to find themselves being watched as they browsed.  Complaint, ¶¶ 18-22.  When they tried to leave the store however, a white Wal-Mart employee insisted upon searching Ms. Bastien's purse and Ms. Gabriel's pockets, notwithstanding the fact that no security sensors had sounded.  Id. at ¶ 24.  The Wal-Mart employee did not search Ms. Myles' purse or her pockets.  Id. at ¶ 25.  Although the girls had taken no merchandise, when they complained about this treatment, a manager who got involved endorsed the conduct of the first Wal-Mart employee.  Id. at ¶¶ 28-29.

Two days earlier, the Belus family were subjected to a similar search in the absence of any sort of security alert that they had stolen any merchandise.  Complaint, ¶ 30.  In this case, after paying for their items and making their way to the exit, the Beluses were confronted by a white Wal-Mart employee who insisted upon searching Mrs. Belus' small backpack-styled purse. Id. at ¶ 32.  Mr. and Mrs. Belus (who are Haitian and Mexican, respectively) were harassed about the origin of a personal care product that Mrs. Belus was carrying in her purse, notwithstanding the fact that it clearly came from another store.  Id. at ¶ 33.  When the Beluses became upset about this treatment, Wal-Mart managers got involved and, although the Beluses had stolen no merchandise, called the police to the scene.  Id. at ¶¶ 36, 38.

Some months before, two African-American friends in their 40s, Marlo Larry and Donna Lee, went Christmas shopping at the Avon Wal-Mart.  Complaint, ¶ 40.  After spending several hundred dollars, the two women headed through the exit doors with a group of white shoppers,

- 2 -

all of whom were also carrying bags of just-purchased merchandise.  Id. at ¶¶ 41-42.  However,

when the security sensor sounded, the Wal-Mart employees targeted only these two black

women – and none of the exiting white shoppers – for a search, much as the Wal-Mart employee

did in the case of the three teens.  Id. at ¶¶ 43-44.  In fact, these two women were hauled back

into the store to be searched not just once, but twice, with the second search more intrusive,

confrontational and humiliating than the first notwithstanding the fact that the women had

purchased all and stolen none of the merchandise they had in their bags or on their person.  Id. at

¶¶ 46-48, 50-52, 53.

Maurice Johnson, who is also African-American, was mistreated in much the same way

as Ms. Lee and Ms. Larry, except in Mr. Johnson's case – like in the case of the three teens – he

had not even reached the exit door before he was selected for a search from among the shoppers

who were leaving the store, all of whom were white.  Complaint, ¶¶ 55, 57.  As happened in the

case of the three teens, the Beluses and Ms. Lee and Ms. Larry, when Mr. Johnson complained to

the managers in the store, they wholeheartedly supported the employee's selective search.  Id. at

¶ 62.

Finally, Carla Vicente, a Cape Verdean woman who was shopping with her children, was

also searched before she reached the exit door; in fact, Ms. Vicente's bags were searched before

the family had even left the cash register.  Complaint, ¶¶ 64-65.  In Ms. Vicente's case, as one

Wal-Mart employee was ringing up and bagging the family's purchases, another white Wal-Mart

employee was rifling through those bags and accusing Ms. Vicente of stealing several items, a

kind of harassment that bears a striking resemblance to the harassment that the Belus family

endured.  Id. at ¶¶ 65-67, 69.  And, like in the case of the Beluses, although the family had stolen

no merchandise, the police were called to the scene.  Id. at ¶¶ 69, 77.

255571.2

**Argument.**

## I.     THE PLAINTIFFS' CLAIMS ARE PROPERLY JOINED.

Whether parties are misjoined for purposes of Rule 21 turns on whether the parties meet the standard for permissive joinder set forth in Rule 20(a).  Rule 20(a) provides that all persons may join in one action as plaintiffs (1) "if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction or occurrence, or series of transactions or occurrences;" and (2) "any question of law or fact common to all these persons will arise in the action."  Fed. R. Civ. P. 20(a).  *See  Maldonado Cordero* v. *AT & T*, 190 F.R.D. 26, 28 (D.P.R. 1999) ("requirements of Rule 20(a) are construed liberally in order to promote the broadest scope of action consistent with fairness to the parties.")  *See also* Wright, FEDERAL PRACTICE & PROCEDURE, vol. 7, § 1653 at 415 (2001 ed.) (noting that requirements of Rule 20 are "flexible concepts … [that] are to be read as broadly as possible whenever doing so is likely to promote judicial economy").

The plaintiffs satisfy the "transactional" prong of Rule 20(a) because each of the plaintiff's claims is "logically related" to the claims of each of the other plaintiff's claims.  *See id.* at 409 (noting with approval the use of the flexible "logically related" test for purposes of Rule 20(a)).  *See also M.K.* v. *Tenet*, 216 F.R.D. 133, 142 (D.D.C. 2002) (ruling that "alleged repeated pattern of [improper conduct] is 'logically related' as 'a series of transactions or occurrences' that establishes an overall pattern of policies and practices" for purposes of Rule 20(a)) (attached to plaintiffs' Motion for Leave to File First Amended Complaint at Tab 1).

Here, the Complaint alleges that Wal-Mart engaged in a pattern and practice of discrimination as evidenced by five incidents at the Avon Wal-Mart.  Each of the incidents involves Wal-Mart employees who range from front-line Wal-Mart greeters to Wal-Mart

managers.  Each of the incidents involved minority shoppers who were targeted for searches or surveillance, treated with suspicion, and/or accused of shoplifting – often in clear violation of Wal-Mart's policies – while similarly situated white customers were permitted to shop, pay and exit the store in peace.  That the incidents of discrimination occurred on different days or by (potentially) different Wal-Mart employees is not dispositive where the "plaintiffs have alleged a pattern of conduct … [that] discriminated against them on the basis of [race, color and/or national origin]."  *Puricelli* v. *CAN Ins. Co.*, 185 F.R.D. 139, 143 (N.D.N.Y.), *dismissed on other grounds*, 103 F. Supp. 2d 91 (1999) (attached to plaintiffs' Motion for Leave to File First Amended Complaint at Tab 2) (ruling that victims of employment discrimination, each of whom worked under a different supervisor and performed different tasks were properly joined).  Indeed, Wal-Mart's argument that the plaintiffs' claims are misjoined because the Complaint does not allege that all the bad acts are attributable to the same employees or that they all occurred on the same day has it exactly backwards: if, as alleged, minority shoppers are harassed regardless of when they shop or who notices them shopping, then the plaintiffs have established the kind of pattern and practice of discrimination that warrants permissive joinder under Rule 20(a).

As noted in their Memorandum in Support of Motion for Leave to File First Amended Complaint, the plaintiffs easily satisfy the second prong of Rule 20(a), as well.  By its plain terms, the Rule does not require that <u>all</u> questions of law and fact be common to all plaintiffs, but simply that there be "any" commonality of law or fact among all of the plaintiffs.  The fundamental question of fact common to all plaintiffs is whether Wal-Mart's targeting of these individuals as shoplifting suspects was triggered by anything other than the plaintiffs' race, color or national origin.  In addition, where the plaintiffs allege that this discrimination was

implemented by employees, security personnel and managers, common questions of fact will

inevitably arise concerning (to state just one example) the express or implicit messages that Wal-

Mart conveys to its employees about minority shoppers in the course of training its employees

about Wal-Mart's loss prevention problems or goals.  Common questions of law will also arise in

this action because each of the plaintiffs seeks relief under federal and state civil rights statutes

(i.e., 42 U.S.C. § 1981, M.G.L. c. 12, § 11I , M.G.L. c. 93, § 102, M.G.L. c. 272, § 98) as well as

the counts for violation of c. 93A, breach of the covenant of good faith and fair dealing, false

imprisonment and defamation.

Finally, where as here, Wal-Mart only contends that it will be prejudiced if the claims are

tried together but does even argue that it will prejudiced if the plaintiffs remain joined before

trial,  then the Court should, consistent with the policy of liberally construing the joinder rules,

deny Wal-Mart's motion to sever.  This policy is particularly important here because to sever the

plaintiffs' claims would prejudice the plaintiffs by unfairly prejudging the nature of the claims.

The discriminatory treatment about which the plaintiffs complain goes beyond the facts and

circumstances of each particular interaction between customer and employee and implicates

corporate policies, corporate attitudes and corporate responsibility.  If severed at this juncture,

the plaintiffs' opportunities for full discovery to establish their allegations may be prejudicially

hampered.

## II.    WAL-MART'S REQUEST FOR SEPARATE TRIALS IS PREMATURE AND WITHOUT ANY FOUNDATION.

Wal-Mart argues that even if joined for purposes of discovery, the plaintiffs' claims should

be tried separately.  None of Wal-Mart's arguments are persuasive in part because all of them are

premature.

Wal-Mart contends that if the plaintiffs' claims are tried together, jury confusion and jury misconduct will inevitably result. The jury will be confused, Wal-Mart claims, because the case will involve a "multitude of witnesses who are expected to testify" (Def. Br. at 7); the jury will behave poorly, Wal-Mart argues, because it will decide "that Wal-Mart deserves to be punished" for all of the alleged misconduct even if there is only evidence of misconduct as to one plaintiff. (Id. at 7-8).

Where the parties have not yet exchanged a single document, propounded a single interrogatory, or deposed a single witness, this Court has nothing before it from which it could rationally determine the extent to which a joint trial might prejudice Wal-Mart (if at all) or the extent to which severed trials might prejudice the plaintiffs. Wal-Mart concedes this point by resting its argument on the hypothetical evidence that one or more plaintiffs might or might not muster.

Nor does the single (and, notably, non-Massachusetts) case cited by Wal-Mart further its case. In *Disparte* v. *Corporate Executive Board*, 223 F.R.D. 7 (D.D.C. 2004) (attached at Tab 1), three plaintiffs claimed to have been discriminated against by their employer. The defendant moved to sever the three claims under Rule 21 or, in the alternative, to try the cases separately under Rule 42(b). Id. at 16. The court rejected the defendant's motion as to two of the plaintiffs because "[t]he relevant legal authority requires the plaintiffs to allege, not prove, a pattern of discrimination to" be properly joined and have their claims tried together. Id. The two properly joined plaintiffs in *Disparte*, like the ten plaintiffs in the case before the Court, "allege that the defendant's upper echelon was aware of, yet failed to act swiftly and effectively in response to racial issues" in the workplace. Id. The court further ruled that having met the standards for

joinder under Rule 21, these two plaintiffs had also met the standards for joint trial under Rule 42(b).  Id.

The court in *Disparte* did sever the third plaintiff's claim but its reasons for doing so bear no relation to the circumstances of this case for two reasons, one having to do with the posture of the case and the other having to do with the context in which the alleged discrimination took place.  First, because the *Disparte* court was confronted with the propriety of trying the plaintiffs' claims together after discovery had closed (rather than before discovery had even begun), its determination about possible jury confusion or prejudice was made on the basis of a complete record rather than on the defendant's hypotheticals about what the evidence <u>might</u> ultimately show.  Id. at 16.

Second, the decision to sever the one plaintiff's claims turned largely on the fact that the case concerned claims of discrimination lodged by employees against their employer, which claims differ in several material respects from claims of discrimination lodged by customers against a retailer.  For example, animating the *Disparte* court's analysis was the fact that one of the plaintiffs worked in a "professional" rather than a "support" capacity.  Id. at 15.  As a result, the standards by which each employee's supervisor had measured that employee's job performance (which in turn would be the yardstick by which the jury would measure the reasonableness of the employer's decision) differed among the plaintiffs.  Id.  Here, by contrast, the yardstick by which a fact finder will ultimately be asked to measure the reasonableness of Wal-Mart's conduct toward these customers will be the same, regardless of each plaintiff's circumstances, namely, whether each shopper of color was treated like a criminal because he was engaged in some conduct that might reasonably have triggered the suspicion of Wal-Mart employees, or whether instead, he was treated like a criminal because of the color of his skin.

- 8 -

Stripped of its conclusory claim of prejudice, Wal-Mart's desire for separate trials is best viewed as evidence of its fear that if confronted with all of the evidence, a reasonable jury will conclude that Wal-Mart engaged in the very pattern and practice of discrimination in which the plaintiffs allege it has engaged.  This is not the type of "prejudice" that Rules 20(b) and 42(b) were intended to prevent.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Wal-Mart's motion to sever as well as its motion for separate trials.

By their attorneys,


/s/ Cara M. Cheyette
Ruth T. Dowling (BBO #645568)
Cara M. Cheyette (BBO #648107)
Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199
(617) 239-0100

Barbara J. Dougan (BBO # 558392)
Lawyers' Committee For  Civil Rights
Under Law of the Boston Bar Association
294 Washington Street, Suite 443
Boston, MA 02108
(617) 482-1145

Anne-Marie G. Harris (BBO #557862)
Salem State College
School of Business
352 Lafayette Street
Salem, MA 01970
(978) 542-6823


October 17, 2005

255571.2

LEXSEE 223 F.R.D. 7

**DANTE DISPARTE, RODNEY COBB, AND WALI F. MUHAMMAD, Plaintiffs, v. CORPORATE EXECUTIVE BOARD, Defendant. )**

**Civil Action No. 03-01561 (RBW)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*223 F.R.D. 7; 2004 U.S. Dist. LEXIS 15997*

**August 13, 2004, Decided**

**DISPOSITION:** [**1] Defendant's Motion to Sever Action Into Three Separate Actions granted in part and denied in part.

**LexisNexis(R) Headnotes**

**COUNSEL:** For DANTE DISPARTE, RODNEY COBB, WALI F. MUHAMMAD, Plaintiffs: Hassan A. Zavareei, TYCKO ZAVAREEI & SPIVA LLP, Washington, DC.

For CORPORATE EXECUTIVE BOARD, Defendant: Jason C. Schwartz, GIBSON, DUNN & CRUTCHER, LLP, Washington, DC.

**JUDGES:** REGGIE B. WALTON, United States District Judge.

**OPINIONBY:** REGGIE B. WALTON

**OPINION:**

[*8] **MEMORANDUM OPINION**

This matter is before the Court on the Defendant's Motion to Sever the Action Into Three Separate Actions pursuant to *Federal Rules of Civil Procedure 20 and 21*, the Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion to Sever the Action Into Three Separate Actions ("Pls.' Opp."), the Plaintiffs' Supplemental Memorandum of Points and Authorities in Opposition to Defendant's Motion to Sever the Action Into Three Separate Actions ("Pls.' Supp. Mem."), and the Defendant's Reply Memorandum in Support of Its Motion to Sever the Action Into Three Separate Actions ("Def.'s Reply"). Upon consideration of the parties' submissions, the Court concludes that the defendant's motion should [**2] be granted in part and denied in part.

**I. Background**

On July 21, 2003, plaintiffs Dante Disparte ("Disparte"), Rodney Cobb ("Cobb"), and [*9] Wali F. Muhammad ("Muhammad"), filed a complaint against the defendant alleging intentional discrimination in violation of the Civil Rights Act of 1866, *42 U.S.C. § 1981*, and unlawful employment discrimination in violation of the District of Columbia Human Rights Act, *D.C. Code Ann. § 2-1402.11*. Complaint ("Compl.") PP 61-77.

Disparte began working for the defendant, the Corporate Executive Board ("CEB"), as an Administrative Assistant on August 21, 2000. Id. P 9. Disparte was promoted to the position of Marketing Associate on February 15, 2001, and was again promoted to the Account Manager position of the Member Services Department ("MSD") of the Corporate Strategy Board on February 29, 2002. Id. P 13-15. n1 Approximately two months later, Disparte was placed on a type of probation called "focus for performance" by Doug Haines ("Haines"), the Associate Director of the MSD. Id. P 16. Seven weeks later, Haines wrote a "Summary of Focus Performance," which noted improvements [**3] in Disparte's performance but nonetheless "provided the supposed basis for Disparte's [alleged] termination." Id. PP 17-18. Specifically, Disparte was accused of not being present at his desk, for using informal communication procedures, for only working regular work hours, and needing assistance to conduct member telephone calls. Id. P 18. Disparte tried to "salvage" his job by meeting with managerial personnel and claiming that his race and not his performance was the basis for what he characterizes as his termination. Id. P 25. n2 On the day prior to his departure, Disparte was placed in a job "where he was to perform menial work, with responsibilities less than those he was given two years earlier. ..." Id. P 27. As a result of this assignment, Disparte contends that he was "embarrassed and humiliated" and he therefore obtained employment with another employer. Id. P 28. Disparte was subsequently replaced by the defendant with a Caucasian. Id. P 29.

Case 1:05-cv-11468-RBC     Document 9-2     Filed 10/17/2005     Page 2 of 8

Page 2
223 F.R.D. 7, *; 2004 U.S. Dist. LEXIS 15997, **

n1 Prior to Disparte's promotion to the Account Manager position, he was not interviewed by his future direct supervisors, Andrea Simkins, the Director of the MSD or Doug Haines, the Associate Director of the MSD. Compl. P 14.

[**4]

n2 Notably, while attempting to meet with managerial personnel concerning his impending termination, Disparte received an email from Andrea Simkins commending his performance. Id. P 26.

Cobb began working for the defendant in October of 2000, as an Operations Associate in the Operations Department. Id. P 32. Cobb was promoted in February 2001, to the position of Operations Coordinator at a branch office of the CEB located at 1875 K Street, N. W., Washington, D.C. Id. P 33. At that time, Jessica Caceres ("Caceres") was the Operations Director and Lisa Herold was the Operations Manager. Id. P 35. Cobb alleges that he was later reassigned to a lower level position and was denied a promotion. Id. PP 44-45. n3 As to the promotion denial, Cobb contends that the Information Processing Department did not want to employ members of the Operations Department, who were all African Americans, and that the position Cobb sought was given to a Caucasian woman. Id. P 45. Eventually, Cobb's employment was terminated by the defendant. Id. P 48.

n3 Matthew Castaldo, a Talent Management employee, "admitted that the requested termination of Mr. Cobb by Jo Ann Ruckel raised a red flag in light of Mr. Cobb's very strong performance reviews." Pls.' Supp. Mem. at 11. The papers submitted by both parties do not explicitly provide an explanation regarding the relationship between the Talent Management Department and CEB, but it appears that Talent's functions include personnel management.

[**5]

Muhammad was hired by the defendant as an Operations Assistant in June of 1999. Id. P 50. He was commended for his performance in this position by Ms. Caceres. Id. PP 51-53. In March 2002, Muhammad met with Caceres and Associate Director Kevin Goode ("Goode"), an African American, for his annual job performance review. Id. P 56. During the review, Muham-

mad was told that he would receive a raise and a promotion. Id. Muhammad took the opportunity at that time to offer constructive criticism of Caceres' leadership skills. Id. As an analogy he used to illustrate Caceres' supervisory deficiency, Muhammad told a "story about a Queen who made rules for the peasants to follow, but never came into the kingdom to [*10] see how the rules worked." Pls.' Supp. Mem. at 7 (citing the Deposition of Wali Muhammad ("Muhammad Dep.") at 6-11). n4 The next day, to Muhammad's surprise, his employment was terminated, allegedly because his job performance "only met expectations." Compl. P 57. It was later discovered, however, that Goode found Muhammad's criticisms of Caceres threatening and was of the view that Muhammad should be terminated. Pls.' Supp. Mem. at 7-8. Goode discussed the matter [**6] with Jim Fenton, id. at 7, the Chief Administrative Officer at the CEB, a member of the CEB's Executive Committee, and the highest ranking leader of the Talent Management Department, id. at 3, 5, and it was decided that Muhammad's employment should be terminated. Id. at 7.

n4 The dates when the depositions were taken that are cited in the Plaintiffs' Supplemental Memorandum are not included. The deposition transcripts are compiled as Exhibit A and are in alphabetical order by the names of the witnesses.

As further proof of their discrimination claims, the plaintiffs note that Fenton occupied all of the above positions when all three of the plaintiffs were terminated. Id. at 3-4. In June of 2001, Fenton had directed another Talent Management officer, Erin Morrisey-Lauer, to conduct a wholesale review of the management of the Operations Department, where plaintiffs Cobb and Muhammad worked at the time. Pls.' Supp. Mem. at 3-4 (internal citations omitted). A review of the Operations Department [**7] management in 2001 revealed that the department's staff of mostly African Americans identified racial issues as a problem within the department. Id. at 4. n5 After meeting with Caceres regarding the results of the review, Fenton and Morrisey-Lauer eventually hired Goode. Id. at 5. Goode allegedly told Cobb that "he was brought to the Corporate Executive Board as a Black man who would be responsible for firing Black people under the direction of the White staff." Deposition of Rodney Cobb ("Cobb Depo.") at 327-328.

n5 The plaintiffs offer a "racially insensitive email" authored by Caceres and testimony that she "frequently yelled at her predominantly African American staff, told them to shut up, and treated them in a demeaning manner[,]" as sup-

Case 1:05-cv-11468-RBC    Document 9-2    Filed 10/17/2005    Page 3 of 8

Page 3

223 F.R.D. 7, *; 2004 U.S. Dist. LEXIS 15997, **

port for their position that they were victims of discrimination. Pls.' Supp. Mem. at 4.

## II. Standard of Review

### A. *Federal Rule of Civil Procedure 20(a)*

"The well-established policy underlying permissive [**8] joinder is to promote trial convenience and expedite the resolution of lawsuits." *Puricelli v. CNA Insurance Co., 185 F.R.D. 139, 142 (N.D.N.Y. 1999)*. Multiple claims are properly joined if they (1) "arise out of the same transaction or occurrence, or series of transactions or occurrences and (2) if any question of law or fact common to all [the plaintiffs] will arise in the action." *Fed. R. Civ. P. 20(a)*. In order to satisfy the first prong of this equation, the claims must be logically related. *Moore v. New York Cotton Exchange, 270 U.S. 593, 610, 70 L. Ed. 750, 46 S. Ct. 367 (1926)*. The logical relationship test is flexible because "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs, 383 U.S. 715, 724, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966)*. Consistent with this liberal standard, the Supreme Court later found that allegations of a "state-wide system designed to enforce the [voter] registration laws in a way that would inevitably deprive colored people [**9] of the right to vote solely because of their color" justified "the joinder of all the registrars [of the six counties] as defendants in a single suit ...[pursuant to] *Rule 20(a)* ..." *United States v. Mississippi, 380 U.S. 128, 142, 13 L. Ed. 2d 717, 85 S. Ct. 808 (1965)*. n6

n6 See also *Alexander v. Fulton County, 207 F.3d 1303, 1324 (11th Cir. 2000)* (affirming joinder because "plaintiffs' claims stem from the same core allegation that they were subject to a systemic pattern or practice of race-based discrimination ...[and] seek relief based on the same series of discriminatory transactions by the same decision-maker in the same department during the same short time frame."); *Mosley v. General Motors Corp., 497 F.2d 1330, 1331 (8th Cir. 1974)* (allowing joinder where ten plaintiffs alleged "a company wide policy purportedly designed to discriminate against blacks in employment" despite different injuries); *M.K. v. Tenet, 216 F.R.D. 133, 142 (D.D.C. 2002)* (holding "alleged pattern of obstruction of counsel by the defendants against the plaintiffs is 'logically related' . . . [and] establishes an overall pattern of policies

aimed at denying effective assistance of counsel to the plaintiffs." ); *Ward v. Johns Hopkins Univ., 861 F. Supp. 367, 378-79 (D. Md. 1994)* (holding plaintiffs' allegations of a pattern of sexual harassment by defendant as the same transaction); *King v. Ralston Purina Co., 97 F.R.D. 477, 480 (W.D.N.C. 1983)* ("Common sense says that claims alleged to be part of a 'pattern and practice' satisfy both the 'transaction' and the 'common question' requisites of *Rule 20(a)*.") But see *Grayson v. K-Mart Corp., 849 F. Supp. 785, 791 (N.D. Ga. 1994)* (rejecting plaintiffs' arguments that the higher cost of separate trials and the loss of cumulative impact of separate trials were sufficient to merit joinder); *Henderson v. AT&T Corp., 918 F. Supp. 1059, 1063 (S.D. Tex. 1996)* (severing plaintiffs because "even assuming there is a pattern or practice of discrimination [by the defendant] it is clear that the Plaintiffs' claims in fact are highly individualized, involving particularized questions about each Plaintiff's work history and job performance"); *Martinez v. Safeway Stores, Inc., 66 F.R.D. 446, 449 (N.D. Cal. 1975)* (granting severance because "there is no showing that [one plaintiff's] claims are sufficiently analogous to the original plaintiffs to say that his right to relief arises from the same series of transactions as their rights do."); *Moorhouse v. Boeing Co., 501 F. Supp. 390, 392 (E.D. Pa. 1980)* (affirming severance of plaintiffs who alleged a pattern of discriminatory practices because "there were . . . substantial enough factual distinctions surrounding each plaintiff's lay off which made it impractical to try all the cases to the same jury."); *Smith v. North American Rockwell Corp., 50 F.R.D. 515, 522-23 (N.D. Okla. 1970)* (granting motion to sever where alleged denial of promotions were made by different supervisors in different work places and for different types of work); *Weir v. Litton Bionetics, Inc., 1986 U.S. Dist. LEXIS 24884, 1986 WL 11608, *6 (D. Md. 1986)* (granting motion to sever because the terminations occurred on different dates, occurred in different company divisions and the terminations were made by different decision makers; trying the claims together would be prejudicial to defendant and confuse the jury).

[**10]

[*11] The second prong of *Rule 20(a)* requires only that there be some common question of law or fact as to all of the plaintiffs' claims, not that all legal and factual issues be common to all the plaintiffs. *Mosley v. General Motors Corp., 497 F.2d 1330, 1334 (8th Cir. 1974)*. Accordingly, where multiple plaintiffs bring suit for em-

Case 1:05-cv-11468-RBC    Document 9-2    Filed 10/17/2005    Page 4 of 8

Page 4

223 F.R.D. 7, *; 2004 U.S. Dist. LEXIS 15997, **

ployment discrimination alleging a pattern of discriminatory behavior "a broad variation of circumstances relating to the merits of individual performance of each of the plaintiffs" will not nullify a common question of fact. *Duke v. Uniroyal, Inc., 928 F.2d 1413, 1420-21 (4th Cir. 1991)*; see *Mosley, 497 F.2d at 1334* (finding defendant's alleged racially discriminatory policy sufficient to show a common question of fact. But see, *Smith v. North American Rockwell Corp., 50 F.R.D. 515, 522-524 (N.D. Okla. 1970) 50 F.R.D. at 524* (holding plaintiffs' allegations based on the same theories of law insufficient to show a common question because "whether a defendant unlawfully discriminated against one plaintiff with respect to promotion or job assignment in a given department is not common with **[**11]** the question whether defendant unlawfully discriminated against another plaintiff in a separate department.").

Moreover, the Court in *Alexander v. Fulton County, 207 F.3d 1303, 1324 (11th Cir. 2000)* found a "systemic pattern or practice of race-based discrimination ...by the same decisionmaker in the same department during the same short time frame" amounted to a common question of fact although the plaintiffs alleged different injuries. *Id. at 1324*. However, the Alexander Court also identified circumstances which could cause prejudice and therefore justify severance, e. g., "the alleged discrimination occurred during different time period[s,] ... different supervisors made the challenged decisions[,] ...or the alleged discrimination happened at geographically removed places." *Id.* Some of these same factors, among others, were determinative in *Smith, 50 F.R.D. at 522-524.* n7 Despite the plaintiffs' allegation of a company wide pattern of discriminatory behavior, a collective trial may require "an evaluation of the administration of varying company rules by different supervisory personnel in different departments all **[**12]** in the context of dissimilar job functions." *Id. at 522.* Therefore, in **[*12]** some circumstances, to avoid prejudicing the parties -- either the plaintiff or the defendant --or confusing the jury, "there would inescapably be [the need for] as many separate lawsuits as parties plaintiff." *Id. at 523*; see also *Henderson v. AT&T, 918 F. Supp. 1059, 1063 (S.D. Tex. 1996)* (severing three of five plaintiffs who alleged more than twenty different claims to avoid jury confusion). The Fourth Circuit, however, noted that even in situations involving "a broad variation of circumstances" carefully worded jury instructions which "point out [that] each plaintiff's claim should be considered separately and should rise or fall on the evidence with respect to that plaintiff" will mitigate the potential prejudicial impact of joinder and potential jury confusion. *Duke, 928 F.2d at 1421.*

n7 The Smith Court noted that "it is of highest importance that the issue on the adjudication of each plaintiff's claim be clear." *50 F.R.D. at 523*. In this regard, the Court identified certain questions that should be asked in an alleged discrimination case: "Who would be deposed as to the issue of allegedly discriminatory exercise of supervisory discretion? Who would be witnesses? What evidence would be heard? What would be the order of proof?" Id.

**[**13]**

**B. *Federal Rule of Civil Procedure 21***

*Federal Rule of Civil Procedure 21* does not define the basis for misjoinder but states that "misjoinder of parties is not grounds for dismissal of an action. Parties may be dropped or added by order of the Court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." *Fed. R. Civ. P. 21*. Although the court must exercise its discretion in deciding whether to sever under *Rule 21*, "it is well-settled that parties are misjoined when the preconditions of permissive joinder set forth in *Rule 20(a)* have not been satisfied." *Puricelli, 185 F.R.D. at 142* (citations omitted). "Once a claim has been severed, however, it proceeds as a discrete unit with its own final judgment, from which an appeal may be taken." 7 Wright & Miller Federal Practice & Procedure Civil § 1689 (2001).

**C. *Federal Rules of Civil Procedure 42(b)***

*Federal Rule of Civil Procedure 42(b)* provides that **[**14]** "the court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order separate trial of any claim ...or of any number of claims." *Fed. R. Civ. P. 42(b)*. "Separate trials usually will result in one judgment, but severed claims become entirely independent actions to be tried, and judgment thereon, independently." 9 Wright & Miller Federal Practice & Procedure Civil § 2387 (2001). "[A] trial judge may separate the claims in the interests of preserving constitutional rights, clarity, or judicial economy" when "both parties, using different triers of fact, could prevail on their respective claims without prejudicing the other party or arriving at inconsistent results[.]" *Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil, More or Less, In Rem, 704 F.2d 1038, 1042 (8th Cir. 1983)*; see also *Amato v. City of Saratoga Springs, New York, 170 F.3d 311, 316 (2nd Cir. 1999)* (explaining that "bifurcation [of the trial] may be appropriate where ...one party will be prejudiced by evidence presented against another party.") (internal citations **[**15]** omitted). In addition, there is "' an important limitation on ordering a separate trial of issues under *Rule 42(b)*: the issue to be tried must be so distinct and

223 F.R.D. 7, *; 2004 U.S. Dist. LEXIS 15997, **

separate from the others that a trial of it alone may be had without injustice.'" *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993) (quoting *Swofford v. B. & W., Inc.*, 336 F.2d 406, 415 (5th Cir. 1964), cert. denied, *379 U.S. 962, 13 L. Ed. 2d 557, 85 S. Ct. 653 (1965)).

> The Court's determination as to whether it should sever the claims of the plaintiffs under *Rule 21* or whether it should order separate trials under *Rule 42* requires the same considerations ....(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common question of law or fact; (3) wether the settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Morris v. Northrop Grumman Corp., 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999).*

### III. Analysis [**16]

The defendant alleges that "even a cursory examination of the facts as alleged in the Complaint reveals that these cases do not arise from the same transaction or occurrence, nor do they raise a common question of fact or law, both of which are mandatory **[*13]** prerequisites for joinder under *Rule 20*." Memorandum of Points and Authorities in Support of Defendant's Motion to Sever the Action Into Three Separate Actions ("Def.'s Mem.") at 2. The defendant contends that "the plaintiffs worked within different departments of the company (sometimes even at different locations), reported to different managers, and left the company at different times for different reasons." Id. Moreover, the defendant states that "the facts and circumstances surrounding each plaintiff's employment, and the corresponding witnesses and documentary evidence, vary dramatically." Id. For example, the defendant points out that "the claims of Mr. Disparte bear no relation to those of Mr. Cobb or Muhammad." Id. Additionally, the defendant contends that "the other two plaintiffs, Messrs. Cobb and Muhammad, have no connection whatsoever to the facts alleged by Mr. Disparte." Id. at 3. n8 The defendant further **[**17]** states that plaintiffs Cobb and Muhammad set forth "substantially different" claims because "they worked in different roles, for different supervisors, at different times, and often in different buildings." Id. Moreover, the defendant

also alleges that "the employment actions about which they complain involved different decision-makers," and that "Mr. Cobb alleges that CEB failed to promote him on the basis of his race, a claim not raised by the other two plaintiffs." Id. at 4. The defendant therefore concludes that "as is evident from the face of the Complaint, CEB's decision to terminate [] Cobb and Muhammad, to deny a promotion to Mr. Cobb, and to offer [] Disparte an alternate position with the company, were individualized decisions made by different decision-makers at different times, and were based on the unique history, facts, and circumstances attending each plaintiff's employment situation [.]" Id. at 5. Thus, the defendant opines that "the allegations do not arise from a common transaction or occurrence, nor do they present common questions of fact or law. Accordingly, under [the] *Federal Rules of Civil Procedure 20* **[**18]** *and 21*, the claims of the three plaintiffs are misjoined and must be severed." Id.

> n8 Specifically, the defendant alleges that plaintiffs Cobb and Muhammad
>
> > do not claim to have witnessed or participated in any of the events identified by Mr. Disparte, nor do they allege any interactions with Doug Haines, Andrea Simkins or any of the other seven witnesses identified in the paragraphs of the Complaint that relate to Mr. Disparte. Neither Mr. Cobb nor Muhammad worked in the Marketing of Member Services Departments, nor did they work in professional positions. They held different jobs, reported to different supervisors, and left the company at different times than Mr. Disparte. Furthermore, unlike Mr. Disparte, Messrs. Cobb and Muhammad did not resign from their positions; instead, the employment of both was terminated. The decision-makers to whom they attribute discriminatory motives differ from those about whom Mr. Disparte complains. Prior to their terminations, neither Mr. Cobb nor Muhammad was placed on a "focus" period.
>
> Def.'s Mem. at 3 (internal citations omitted).

223 F.R.D. 7, *; 2004 U.S. Dist. LEXIS 15997, **

[**19]

Alternatively, the defendant argues that "even if the Court concludes that the plaintiffs are not improperly joined, the Court should nonetheless exercise its discretion pursuant to *Federal Rule of Civil Procedure 21* to sever the action to avoid overly complicated discovery, unnecessary delay, jury confusion and prejudice to the defendant." Id. at 11. The defendant again alleges that "the plaintiffs' situations are each unique, involving particularized questions about each plaintiff's work history and job performance. Each plaintiff's case therefore relies on different documentary proof and on different casts of witnesses." Id. at 11-12. Moreover, the defendant contends that the plaintiffs have not shown the existence of a company wide pattern of discriminatory employment policies and practices or that these claims are part of such a pattern. Def.'s Reply at 7-8. In support of this contention, the defendant first points out that the plaintiffs withdrew their statistical expert because his findings did not reveal such a pattern. Id. at 3. Second, the defendant notes that although all of the plaintiffs maintain that denial of promotions [**20] was part of this pattern, only Cobb was denied a promotion. n9 Id. at 8. [*14] Third, the defendant claims that the plaintiffs have not produced evidence to support the existence of a pattern of discriminatory practices by merely asserting that fewer African Americans are in positions of authority than Caucasians. Id. at 9. Finally, the defendant contends that the plaintiffs' allegation of a pattern of discriminatory practices conflicts with the record, which shows that African American employees replaced Cobb and Muhammad, Disparte was selected for a professional position, served in two professional departments and was promoted twice, and the defendant's statistics demonstrate promotions were not awarded according to race. Id. at 10

n9 The defendant points out that Muhammad actually received a promotion one day before his termination from the Operations Department and that he "acknowledged he was unqualified" for the job he applied for in the Meetings Department. Def.'s Reply at 8. Moreover, the defendant notes that "Disparte identifies no promotional opportunity he sought and was denied. Rather, he was promoted and served in several professional positions." Id. at 9.

[**21]

The defendant also argues that the plaintiffs each present unique and individualized claims, which if tried together would subject the defendant to prejudice. Id. Specifically, the defendant claims that because Disparte raises claims not connected to the claims of Cobb and Muhammad, Disparte's evidence of racial discrimination would cause incurable prejudice because his accusations would be imputed to Cobb's and Muhammad's superiors. Id. at 12. Likewise, the defendant submits that Cobb and Muhammad also present unrelated claims because the personnel who had input into Muhammad's termination were not involved in Cobb's termination. Id. at 12-13. The defendant also claims it will be prejudiced because each individual plaintiff will rely on the testimony of the other two to try to establish a "collective" pattern of discriminatory practices, such as, for example, the alleged conduct of Caceres and Fowler. Id. at 15, 18. According to the defendant, Fowler's statements do not pertain to the claims of Muhammad and Disparte, as they were not managed or terminated by him. Id. at 18. In addition, the defendant opines that Caceres' statements are only admissible in Muhammad's [**22] case because he was the only one of the three plaintiffs whom she supervised. Id. Therefore, the defendant concludes that any discriminatory comments by Caceres and Fowler would be prejudicial because "it would influence the jury's view of other company managers." Id. n10 Accordingly, the defendant concludes that severing or separating the cases for trial would alleviate the risk of prejudice. Id.

n10 The defendant also rejects the plaintiffs' assertion that the same evidence would be presented at three separate trials because the decision makers and motives relating to the termination of each plaintiff are different. Def.'s Reply at 19.

The plaintiffs, on the other hand, maintain that the claims of Disparte, Cobb, and Muhammad are properly joined under *Rule 20(a)* because all three claims are brought pursuant to *42 U.S.C. § 1981*. Pls.' Supp. Mem. at 27. Cobb and Disparte also allege claims under the D.C. Human Rights Act. Id. Additionally, all three plaintiffs claim that [**23] they were "denied opportunities and promotions because of their race, and were ultimately terminated because of their race." Id. The plaintiffs argue that the policy in favor of joinder would not be served if these plaintiffs' claims are severed as there are common issues, witnesses, and lawyers concerning all three of the plaintiff's claims. Pls.' Opp. at 3. Moreover, the plaintiffs proclaim that the parties would be forced to engage in duplicative discovery in the form of witness depositions, expert testimony and separate motions. Id. The plaintiffs' further allege that the defendant perpetuated a company wide pattern of discriminatory policies and practices and the relevant facts of this pattern are common to all three plaintiffs. Pls.' Supp. Mem. at 23. On this point, the plaintiffs contend that Disparte's claims are factually connected to Cobb's and Muham-

Case 1:05-cv-11468-RBC     Document 9-2     Filed 10/17/2005     Page 7 of 8

Page 7

223 F.R.D. 7, *; 2004 U.S. Dist. LEXIS 15997, **

mad's because some of the same witnesses would have to testify about each of the plaintiffs' claims. Id. at 24-26. n11 Moreover, from **[*15]** the plaintiffs' perspective, Muhammad's claims are factually connected to Cobb's because "they worked together [in the Operations Department], were supervised by the same managers, **[**24]** and complain of the same adverse treatment," along with having to call common witnesses to establish their claims. Id. at 27. Finally, the plaintiffs maintain that the defendant has not demonstrated that it will be prejudiced if these claims are pursued collectively. Id. at 28-30. Rather, the plaintiffs argue that severance would force the Court to conduct three different trials with almost the same evidence. Id. And, the plaintiffs contend that even if there is a risk of prejudice, "this Court may prevent prejudice to the defendant by providing [] carefully worded jury instructions." Id.

n11 Specifically, (1) James Fenton, former Director of the CEB's human resources department, allegedly played a role in the discriminatory practices and termination of all three plaintiffs, (2) Ayoka Jack, a CEB human resources. resources officer, allegedly played a role in the termination of Muhammad and Disparte and in the (review of Jessica Caceres, who was the director of Cobb's and Muhammad's department, (3) Matt Castaldo was the CEB human resources employee who approved Cobb's and Disparte's terminations, and (4) Nikki Barnett, one of the two highest ranking African American employees at the CEB, has knowledge of facts pertaining to Disparte's and Cobb's terminations. Pls.' Supp. Mem at 24-26.

**[**25]**

For the following reasons, the Court concludes that plaintiffs Cobb and Muhammad are improperly joined with Disparte. While the three plaintiffs' claims are allegedly logically related to the allegation of a company wide pattern of discrimination at the CEB, Disparte worked in a different capacity, in a different department, under different supervisors and offers different evidence of racial discrimination than Cobb and Muhammad. *Moore v. New York Cotton Exchange, 270 U.S. at 610*; *Alexander, 207 F.3d at 1324*; *Mosley, 497 F.2d at 1331*. Allowing Disparte to pursue his claims in a joint trial with Cobb and Muhammad would prejudice the defendant because there is a significant likelihood that a single jury would be confused by the different items of evidence and the different witnesses' testimony. *Smith, 50 F.R.D. at 523*. Thus, different supervisors and job functions among the plaintiffs are factors recognized as potential sources of prejudice. *Alexander, 207 F.3d at*

*1324*; *Smith 50 F.R.D. at 523*. Here, Disparte worked in a professional capacity as a Member Services Account Manager in the MSD and was supervised and his work performance was reviewed by Haines, Andrea Simkins and Casey Jones. Compl. P P 21-22. Disparte's evaluations were based on "focus for performance" standards and Ms. Simkins authorized Disparte's termination. Compl. P 16. On the other hand, Cobb and Muhammad worked as support personnel in the Operations Department under the direct supervision of Lisa Herold and Caceras. Pls. Opp. at 11 The Operations Department did not use the "focus for performance" standards to evaluate its employees, but rated employees on a scale of one to four. Compl. P 34. While Fenton authorized Muhammad's dismissal and played a prominent role in Cobb's termination, Disparte's only direct contact with Fenton was a letter requesting a meeting, which was referred to Mr. Castaldo. Pls.' Supp. Mem. at 7, 13. Under these circumstances, the Court finds that it is very probable that the supervisors called to testify in reference to Disparte's claims would have their testimony commingled with the supervisors called to testify in reference to Cobb's and Muhammad's claims, thereby subjecting the defendant to possible prejudice.

The Court also finds that the facts underlying Disparte's **[**27]** claims are so divergent from Cobb's and Muhammad's that there is a high probability that the defendant would encounter prejudice due to jury confusion. Here, unlike *Alexander, 207 F.3d at 1324*, the plaintiffs will offer different evidence of racial discrimination concerning Disparte, as compared to Cobb and Muhammad. Disparte's claims of racial discrimination are centered on the conduct of Ms. Simkins, alleging that she has a history of discriminating against African American employees and "treated Mr. Disparte coldly from the start." Pls.' Supp. Mem. at 11. Cobb and Muhammad both support their claims with the conduct of Caceres, Fowler and Goode, in the harsher treatment of African American employees in the Operations Department and the racially insensitive remarks of Ms. Ruckel to the Operations Department staff. See generally Pls.' Supp. Mem. at 7-12. These distinctions, in contrast to the evidence Disparte will produce, demands that his claims be severed from the claims of Cobb and Muhammad to avoid jury confusion and incurable prejudice to the defendant.

However, the defendant's motion with respect to Cobb and Muhammad is denied. The relevant legal authority **[**28]** requires the plaintiffs to allege, not prove, a pattern of **[*16]** discrimination to merit the proper joinder of parties. Cobb's and Muhammad's allegations are sufficient in this regard. See *United States v. Mississippi, 380 U.S. 128, 85 S. Ct. at 816* (denying severance because plaintiffs asserted an allegation of a state-wide system of racial discrimination); *M.K. v. Tenet, 216*

223 F.R.D. 7, *; 2004 U.S. Dist. LEXIS 15997, **

*F.R.D. at 142* (concluding that "the alleged repeated pattern of obstruction of counsel ...is 'logically related' as 'a series of transactions or occurrences' that establishes an overall pattern of policies and practices ....") (emphasis added); *Puricelli, 185 F.R.D. at 143* (denying severance because "plaintiffs have alleged a pattern of conduct ...which discriminated against them on the basis of age.") (emphasis added). In addition to their common superiors and job functions, Cobb and Muhammad offer evidence in support of their assertion of a racially discriminatory policy in the department where Cobb and Muhammad were employed. n12 First, the two plaintiffs allege that the defendant's upper echelon was aware of, yet failed to act swiftly and effectively in response to **[**29]** racial issues in the Operations Department. Pls.' Supp. Mem. at 4-6. Second, the plaintiffs offer testimony from Mr. Goode that the defendant promoted a discriminatory policy by instructing him to alter performance reviews of employees in the Operations Department. Id. at 5-6. Third, Cobb and Muhammad offer evidence of the more lenient treatment of Caucasian employees as compared to the treatment of African American employees in the Operations Department. Id. at 8-9. Finally, the plaintiffs point to repeated racial remarks by several Caucasian managers in the Operations Department toward African Americans. Id. at 8-10. While the defendant cites to evidence that counters Cobb's and Muhammad's allegations, the Court concludes that Cobb and Muhammad sufficiently allege a pattern and practice of discriminatory behavior to satisfy both the transactional and the common question of fact tests to merit the presentation of their claims to a single jury. *Alexander, 207 F.3d at 1323-24.* Therefore, the alleged company wide pattern of discrimination satisfies both prongs of *Rule 20*, making the joinder of Cobb and Muhammad proper. *United States v. Mississippi, 380 U.S. 128, 85 S. Ct. at 816;* **[**30]** *Mosley, 497 F.2d at 1331.*

n12 After the initial filing of the defendant's motion to sever, discovery proceeded and revealed additional facts that would support plaintiffs' allegations of a company wide discriminatory policy. The Court does not conclude that this information affirmatively demonstrates a company wide discriminatory policy, but it does conclude that it weighs against severing Cobb's and

Muhammad's claims or separating their cases for trial.

Notwithstanding the proper joinder of Cobb and Muhammad, the defendant also requests that this action should be severed pursuant to *Federal Rule of Civil Procedure 21* to prevent prejudice and avoid jury confusion. Def.'s Reply at 5. The defendant also alternatively argues that since discovery is now complete, the Court may now separate the cases for trial pursuant to *Federal Rule of Civil Procedure 42(b)*. Id. However, the Court denies the defendant's requests **[**31]** for severance pursuant to *Rule 21* and separate trials pursuant to *Rule 42(b)*. The minimal prejudice the defendant may sustain from the joint trial of Cobb and Muhammad does not outweigh the policy goals of permissive joinder, which "promotes trial convenience and expedites the resolution of lawsuits." *Puricelli, 185 F.R.D. at 142.* The plaintiffs' claims arise out of the same alleged pattern of discriminatory practices and policies at the CEB and share common questions of fact. *Morris, 37 F. Supp. 2d at 580.* In addition, the plaintiffs identified common supervisors, witnesses and events relevant to Cobb's and Muhammad's claims. Pls.' Supp. Mem. at 23-27. Equally important is the fact that judicial economy would suffer if their claims were severed or separate trials were ordered because Cobb and Muhammad will use some of the same evidence to show a pattern of discriminatory policies and practices. Id. at 30-31. Furthermore, unlike the plaintiffs in *Grayson, 849 F. Supp. at 791,* there is little possibility that the jury will be confused by the joint presentation of their claims, especially with properly crafted jury instructions. **[**32]** *Duke, 928 F.2d at 1421.*

### IV. Conclusion

For the reasons set forth above, this Court concludes that Defendant's Motion to Sever **[*17]** the Action Into Three Separate Actions is hereby granted in part and denied in part. Accordingly, the claims of plaintiff Disparte are severed from the claims of the other two plaintiffs. However, the claims of plaintiffs Cobb and Muhammad will not be severed.

SO ORDERED this 13th day of August 2004.

REGGIE B. WALTON

United States District Judge